## CAPITAL TRANSIT CO. v. UNITED STATES et al.

Civ. A. No. 398–51.

United States District Court District of Columbia.

Argued March 15, 1951.

Decided April 23, 1951.

616

Edmund L. Jones, F. G. Awalt and Daryal A. Myse, all of Washington, D. C., for plaintiff.

John F. Baecher and William J. Hickey, Washington, D. C., for defendant.

Manuel J. Davis and S. Harrison Kahn, Washington, D. C., for intervenor Oriole Motor Coach Lines, Inc.

Daniel W. Knowlton and H. L. Underwood, Washington, D. C., for intervenor Interstate Commerce Commission.

Before WASHINGTON, Circuit Judge, and KIRKLAND and BASTIAN, District Judges.

WASHINGTON, Circuit Judge.

The Capital Transit Company brings this suit to set aside an order of the Interstate Commerce Commission dated January 8, 1951, granting an application by Oriole Motor Coach Lines, Inc., for a certificate of convenience and necessity, pursuant to section 207 of the Motor Carrier Act of 1935, 49 U.S.C.A. § 307(a), to transport passengers in interstate commerce between certain points in Maryland and the District of Columbia. The net effect of the Commission's order is to lift certain restrictions on Oriole's operations which were imposed by a previous certificate of convenience and necessity issued by the Commission. These restrictions prohibited the rendition of service to persons traveling between points in the District of Columbia and points on Oriole's routes south of the intersection of Forest Glen Road and Maryland Highway 97, as well as south of the intersection of Old Bladensberg Road (Maryland Highway 193) and Colesville Road (U. S. Highway 29). Thus, while Oriole buses rendered

service from the District of Columbia to points beyond these intersections, and their buses traversed this area, they could neither take passengers from the District of Columbia to points south of the intersections, nor pick up passengers south of the intersections for transportation to the District of Columbia.[1] The Capital Transit Company operates routes in Montgomery County which are generally similar to those operated by Oriole, except that Oriole's routes continue for a substantial distance beyond the Montgomery County termini of the Capital Transit lines. Capital Transit's lines are on an unrestricted basis as far as picking up passengers is concerned, and thus the lifting of the restrictions on Oriole would place the latter in direct competition with Capital Transit in this area. At the southern end, both companies' lines terminate at Georgia Avenue and Alaska Avenue, just inside the District of Columbia boundary line.[2]

Capital Transit intervened in the proceedings before the Interstate Commerce Commission which led up to the order granting the certificate of convenience and necessity to Oriole. Capital Transit took an active part in the proceedings, seeking chiefly to establish that its own service in Montgomery County over the routes in question was adequate, and that the grant of the proposed certificate to Oriole would not be in the public interest. In the present action its principal contentions are (1) that there was no substantial evidence to support the Commission's conclusion that the proposed service by Oriole is or will be required by present or future public convenience and necessity; (2) that the Commission had no substantial evidence before it to support its conclusion that Oriole is fit, willing and able properly to perform the service proposed and to conform to the provisions of the Motor Carriers Act and the requirements of the rules and regulations of the Commission; (3) that the Interstate Com-

merce Commission did not make the necessary findings of fact to support its determination, under section 8(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1007 (b).

Before considering these questions, it may be appropriate to outline the proceedings before the Commission: Pursuant to the provisions of section 205 of the Motor Carriers Act, 49 U.S.C.A. § 305, the Commission appointed a Joint Board (No. 120), consisting of a representative of Maryland and a representative of the District of Columbia, to consider Oriole's application. On August 26, 1949, the Joint Board held a hearing. Oriole introduced testimony to the effect that it was now operating its buses with a large number of vacant seats. It further introduced evidence showing that the population of Silver Spring and Montgomery County had substantially increased in recent years, and put on a number of witnesses whose testimony tended to show that there was a demand for increased transportation service among residents of Montgomery County along the routes of Oriole and Capital Transit which are here in question. Among these witnesses was the President of the Board of Trade of Silver Spring, who testified that the merchants of the community desired additional transportation service from outlying areas into the Silver Spring shopping center. He stated that the lifting of the restrictions on Oriole would be of benefit to Silver Spring and its residents. (Tr. 93, 106) A witness appearing for the Allied Civic Group, composed of some 20 citizens' associations in the Silver Spring area, testified on a similar basis. Some nine other witnesses also supported the application.

Capital Transit, in opposing Oriole's application, offered the testimony of its chief engineer, who testified in general terms that for a period of years Capital Transit had suffered a loss through its Maryland operations, and that if the restrictions on Oriole

---

1. Maryland imposed certain other restrictions precluding Oriole from picking up passengers along those routes south of the intersections for transport to any other point south of the intersections, within Maryland, i. e., transportation solely in the Silver Spring area.

2. Service from the Georgia-Alaska terminal to the down-town area of Washington is provided by Capital Transit on separate lines. Capital Transit also operates an express bus service from Silver Spring to the down-town area of Washington.

were lifted this loss would be increased. During the course of the proceeding it was intimated that under such circumstances Capital Transit might cease operating lines competing with Oriole in the Silver Spring area. Capital Transit also endeavored to bring out, through its engineer and through cross-examination of the public witnesses, that its services were adequate, and that the public would suffer if, as a result of competition, Capital Transit decided to cease some or all of its Maryland operations.[3]

Such, in general, was the nature of the evidence adduced as to the need for additional service. Joint Board No. 120 rendered a report, served November 2, 1949, recommending the grant to Oriole of the certificate for which it had applied. The report included findings of fact that the present and future public convenience and necessity "require operation by applicant * * * " in the manner proposed, that "applicant is fit, willing, and able properly to perform such service and to conform to the requirements of the act and our rules and regulations thereunder; and that an appropriate certificate should be issued." Exceptions to the report and recommended order were filed by Capital Transit.

Division 5 of the Commission, which reviewed the report of the Joint Board, rendered a report dated August 7, 1950. The evidence was recited at some length and the testimony offered by Oriole and Capital Transit was fully discussed. Its decision was in favor of granting the certificate.

Capital Transit then filed a petition for reconsideration and further hearing. In that petition it offered more specific statements as to its losses from operations in the area, though apparently these were not accompanied by a full statement of the accounting methods employed.[4] Nor was any explanation given for failure to submit these figures to the Joint Board or Division 5.[5] The Interstate Commerce Commission at a general session held on January 8, 1951, denied Capital Transit's petition, "for the reason that the evidence of record substantiates the findings of Division 5," and that Capital Transit had not established "that it is in a position to present additional material evidence at a further hearing which would alter the conclusions already reached."

Turning now to Capital Transit's first contention: namely, that the Commission's determination of public convenience and necessity is not supported by substantial evidence on the record considered as a whole, as required by section 10(e) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(e). The Supreme Court has lately interpreted that section as applied to a labor practice proceeding before the National Labor Relations Board. The Court held that section 10(e), as well as the provisions of the Labor Management Relations Act governing judicial review, required the reviewing court to consider the entire record of evidence and to apply the following principle: "The Board's findings are entitled to respect; but they must nonetheless

3. Capital Transit cites to us (Brief, p. 19), for example, the following colloquy on cross-examination of a public witness:

"Q. And if it so turns out as a result of granting this application that the patronage on Capital Transit Lines drops, and they are forced to curtail service, or even abandon service, in that event would you feel the granting of this application would be in your interest? A. I think it would not make very much difference one way or the other, if the Oriole people maintain the same length of service, the same headway as Capital Transit does now. We would be no better off nor no worse off.

 * * * * * *

"Q. In the event Oriole did not maintain the same number of schedules, you

feel you would be worse off? A. Naturally." (Tr. 68–69.)

4. It is not clear, for example, whether or to what extent express service from Silver Spring to down-town Washington is included in the computation of profit or loss from Maryland lines.

5. Rule 101(b), General Rules of Practice before the Interstate Commerce Commission, provides: "Rehearing or further hearing—When in a petition filed under this rule opportunity is sought to introduce evidence, the evidence to be adduced must be stated briefly, such evidence must not appear to be cumulative, and *explanation must be given why such evidence was not previously adduced.*" (Italics supplied.)

be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both." Universal Camera Corp. v. National Labor Relations Board, 71 S.Ct. 456, 465. The "substantial evidence" rule of section 10(e) (5) of the Administrative Procedure Act applies by its terms to cases "subject to the requirements of sections 7 and 8 [of the Administrative Procedure Act] or otherwise reviewed on the record of an agency hearing provided by statute". The Supreme Court has recently held that proceedings of the present character are subject to the requirements of sections 7 and 8 of the Administrative Procedure Act, 5 U.S.C.A. §§ 1006, 1007. Riss & Co., Inc. v. United States, 71 S.Ct. 620. Accordingly, we shall follow here the principles set forth in the Universal Camera decision.

In applying that standard we must keep in mind that the Commission is, like the Labor Board, "one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect." And even where expertise is not required, the court may not substitute its own view for that of the Commission on a "choice between two fairly conflicting views". Universal Camera Corp. v. National Labor Relations Board, supra. Prior to the enactment of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., the Supreme Court had made clear that in this area the courts are not "the arbiters of the paramount public interest." The Court went on to say that "This is rather the business of the Commission, made such by the very terms of the statute. The function of the reviewing court is much more restricted. * * * It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law." United States v. Pierce Auto Lines, 327 U.S. 515, 535–536, 66 S.Ct. 687, 698, 90 L.Ed. 821. The Administrative Procedure Act has not changed this principle. The decision in the Universal Camera case (which we have followed here) recognizes that the precise scope of judicial review must vary to a certain extent with the type of action being taken by an administrative agency and must vary also in relation to the statutory framework established by Congress for the guidance of the particular agency.[6] Under the Universal Camera case, we are not required to weigh the evidence. Nor are we required to indicate what our own view of the evidence would be, or what decision we would reach as to the desirability of the proposed increase in transportation service. These are matters entrusted by Congress to the Joint Board and the Interstate Commerce Commission. Our task is to see that the requirements of the law have been observed in the conduct of the agency's proceedings, and that its conclusion as to public convenience and necessity has a rational basis in the facts found, facts which must be supported by substantial evidence on the record considered as a whole.

6. Though a discussion of the point is unnecessary to the decision of this case, it is well to note that the introductory clause of section 10 of the Administrative Procedure Act, entitled "Judicial Review," provides: "Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion. * * *" This clause applies to and modifies every part of section 10, including the provisions of section 10(e) relative to scope of review. See Davis, Scope of Review of Federal Administrative Action, 50 Col.L.Rev.

559, Nonreviewable Administrative Action, 96 U. of Pa.L.Rev. 749. The established discretionary authority of the Interstate Commerce Commission, recognized by such cases as Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051, has not by any means been abolished by the Administrative Procedure Act; that Act, on the contrary, preserves it, while delineating the scope of judicial review of its exercise. See Universal Camera Corp. v. National Labor Relations Board, supra, 71 S.Ct. 456.

Here, the net effect of the testimony offered by Oriole was that there is sentiment among the population of Montgomery County in favor of increased bus service, both on the part of potential passengers and the local commercial groups. There was specific testimony expressing dissatisfaction with the system whereby an Oriole bus with vacant seats must pass by and the passenger be compelled to wait for a Capital Transit bus. Capital Transit was permitted to intervene and to put on testimony, but offered no testimony to rebut the evidence of demand for increased service on the part of the community. With regard to Capital Transit's operations in the area, it can be assumed that the lines in question have not been profitable for Capital Transit.[7] But a showing of loss is not enough to preclude issuance of a certificate to a competitor. And any gaps in Capital Transit's case are chargeable to it and not to the Joint Board or to the Commission. The latter bodies, after all, are basically concerned with protecting the public interest. They must, of course, consider and give due weight to the position of existing carriers serving the public along the routes in question. I. C. C. v. Parker, 326 U.S. 60, 65 S. Ct. 1490, 89 L.Ed. 2051; American Trucking Ass'ns v. United States, 326 U.S. 77, 65 S.Ct. 1499, 89 L.Ed. 2065. But under the Motor Carrier Act, 49 U.S.C.A. § 301 et seq., there is no vested right in the public highways or in any transportation business conducted on those highways.

Capital Transit argues that the issuance of the proposed certificate to Oriole may well force it to cut down on its own service or even to abandon service altogether. It is not necessary for us to consider whether or not Capital Transit can legally do either of these things, under Federal law or Maryland law. We certainly cannot say as a matter of law that the Commission acted improperly in authorizing alternative service to the public by another carrier in view of the public demand for more service and Capital Transit's often-repeated suggestion before the Commission (based on the losses which Capital Transit claims it has incurred in its Maryland operations) that it might be forced to diminish service on its lines or even abandon them. In a somewhat analogous case, the Supreme Court said: "If the Commission were required to deny these applications unless it found an actual inability on the part of existing carriers to acquire the facilities necessary for future transportaton needs, a limitation would be imposed on the power of the Commission which is not found in the Act. The Commission is the guardian of the public interest in determining whether certificates of convenience and necessity shall be granted. For the performance of that function the Commission has been entrusted with a wide range of discretionary authority. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490 [89 L.Ed. 2051]. Its function is not only to appraise the facts and to draw inferences from them but also to bring to bear upon the problem an expert judgment and to determine from its analysis of the total situation on which side of the controversy the public interest lies. * * * Forecasts as to the future are necessary to the decision. * * * It may be that the public interest requires that future shipping needs be assured rather than left uncertain. The Commission has the discretion so to decide. It went no further here." United States v. Detroit Navigation Co., 326 U.S. 236, 240-241, 66 S.Ct. 75, 77, 90 L.Ed. 38.

We next consider Capital Transit's contention, made at all stages of the proceeding, that Oriole is not fit, willing or able properly to perform the service proposed or to conform to the provisions of the Motor Carrier Act and the Commission's requirements thereunder. At the hearing before the Joint Board, Capital Transit endeavored to show that Oriole did not meet all its schedules, that its equipment went back to 1938, and the like. At a later stage, on December 28, 1949, Capital Transit filed supplemental exceptions to the report of the Joint Board. These exceptions were based on a complaint filed on December 12, 1949,

7. Apparently these lines are considered as a separate accounting unit without reference to any profits which might be earned by transporting Maryland passengers to down-town Washington from the terminal at Georgia and Alaska.

by the Commission against Oriole in the United States District Court for the District of Maryland. The exceptions were considered by Division 5 of the Commission, which stated that "unlawful operations and violations of the provisions of the Act render a carrier subject to prosecution, but do not necessarily require a finding of lack of fitness and are therefore not a bar to the granting of authority."

It is not for this court to determine whether or not the Commission's complaint against Oriole was justified, or to attempt to assess the exact weight the Commission gave to its issuance of that complaint in considering Oriole's application for the proposed increase in service. The Commission cannot estop itself by issuing such a complaint from facing the ultimate issue whether public convenience and necessity require the issuance of a certificate under section 207 of the Act. What we have in the present situation is simply the question whether Oriole shall be permitted to open its doors in an area heretofore restricted and take on additional passengers in need of service. The Commission may well have considered that the provision of that additional service on routes which were already in operation, and which the issuance of its complaint would in no way have brought to an end, was paramount. Oriole's financial and physical ability to provide the service was clearly demonstrated. In view of the other evidence as to the fitness, willingness and ability of Oriole to render the increased service, we cannot say that the final determination of the Commission in this respect was unreasonable or that it was not based on substantial evidence.

Capital Transit also contends that the Commission did not make the necessary findings of fact to support its determination. Specifically Capital Transit cites section 8(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1007(b), which requires that in certain classes of agency proceedings "All decisions * * * shall * * * include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record * * *." As we have indicated,

the Supreme Court has very recently determined that a licensing proceeding before the Interstate Commerce Commission is a case where there is an "adjudication required by statute to be determined on the record after opportunity for an agency hearing". 5 U.S.C.A. § 1004. Riss & Co., Inc. v. United States, supra. Under the statutory provisions, it follows that section 8(b) is applicable to proceedings such as these.

The Commission here made its ultimate findings in the terms of the Motor Carriers Act, which authorizes issuance of a certificate of convenience and necessity when it is found "that the applicant is fit, willing, and able properly to perform the service proposed and to conform to * * *" the requirements of law "and that the proposed service * * * is or will be required by the present or future public convenience and necessity * * *." In addition, Division 5 of the Commission filed a lengthy opinion setting out the facts in detail and the considerations which it deemed applicable in reaching its conclusion. Certainly more than "Enough has been 'put of record to enable us to perform the limited task which is ours.'" Alabama Great Southern R. R. Co., et al. v. United States, 340 U.S. 216, 71 S.Ct. 264, 272. And the Administrative Procedure Act does not require detailed findings of every subsidiary evidentiary fact. So long as the agency makes amply clear the factual basis upon which it has proceeded, there can be no ground for complaint. Here the facts and policies upon which the Commission proceeded are fully set forth. There appears to be no omission in the Commission's statement which is in any way prejudicial to complainant. There is not lacking any element, either as to findings of fact or considerations of policy, necessary to support the present order of the Commission. The requirements of section 8(b) of the Administrative Procedure Act were satisfied. See Norfolk Southern Bus Corp v. United States, D.C.E.D.Va., 96 F.Supp. 756, affirmed 340 U.S. 802, 71 S.Ct. 68.

Since the Commission's findings of fact are supported by substantial evidence on the entire record, and since in determining pub-

622

lic convenience and necessity the Commission acted within the discretion delegated to it by Congress, arriving at a conclusion having rational basis in the facts, its determination should stand.

The injunctive relief sought will be denied, and the complaint will be

Dismissed.

KIRKLAND and BASTIAN, District Judges, concur.