**ST. JOHNSBURY TRUCKING CO., Inc. v. UNITED STATES et al.**

No. 945.

United States District Court
D. Vermont.

Sept. 5, 1951.

978

Sterry R. Waterman, of St. Johnsbury, Vt. (Francis E. Barrett, Neal J. Holland, both of Boston, Mass., and John H. Downs, of St. Johnsbury, Vt., on the brief), for plaintiffs.

Edward J. Hickey, Jr., Department of Justice, of Washington, D. C., and Joseph A. McNamara, U. S. Atty. for District of Vermont, of Burlington, Vt. (John F. Sonnett, U. S. Department of Justice, William J. Hickey, Sp. Asst. to the Atty. Gen., H. G. Morison, Asst. Atty. Gen., James E. Kilday and John F. Baecher, Sp. Assts. to the Atty. Gen., all of Washington, D. C., on the brief), for defendant United States.

Edward M. Reidy, Associate Chief Counsel, Interstate Commerce Commission, of Washington, D. C. (Gordon C. Locke and Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, both of Washington, D. C., on the brief), for defendant Interstate Commerce Commission.

Reubin Kaminsky, of Hartford, Conn. (Hugh M. Joseloff, of Hartford, Conn., on the brief), for defendants Marvin J. Haigis and Kneeland G. Nichols, doing business as Tri-State Motor Lines.

Before CHASE, Circuit Judge, and FOLEY, and GIBSON, District Judges.

GIBSON, District Judge.

In their complaint, the plaintiffs request that the decision of the Interstate Commerce Commission rendered on March 7, 1946 and the certificate of public convenience and necessity issued April 16, 1947 by the Commission to Messrs. Haigis and Nichols, doing business as Tri-State Motor Lines, be annulled and set aside. The following facts are undisputed.

On February 15, 1941, Messrs. Haigis and Nichols received a certificate authorizing the transportation of general commodities, with usual exceptions, over irregular routes between Brattleboro, Vermont, on the one hand, and on the other, points and places in New Hampshire, Vermont and Massachusetts. Messrs. Haigis and Nichols were the successors to the grandfather's rights of one Raymond Pierce of Brattleboro.

Shortly after the certificate of February 15, 1941 was issued by the Interstate Commerce Commission to Haigis and Nichols, one of the plaintiffs in this case, Gay's Express, Inc., filed a complaint with the Interstate Commerce Commission claiming that said Haigis and Nichols were operating beyond the scope of that certificate.

After a hearing on this complaint before a joint board and an appeal to the Interstate Commerce Commission, the Commission, Division 5, on April 7, 1944, found that Messrs. Haigis and Nichols were indeed operating beyond the scope of their February 15, 1941 certificate, and entered an order that they cease and desist from such violations. This cease and desist order finally took effect August 15, 1944. However, in that same decision, the Commission found that Messrs. Haigis and Nichols' illegal operations had been conducted at all times in good faith under the belief that such operations were within the authority granted by the February 15, 1941 certificate.

On May 12, 1944, Messrs. Haigis and Nichols filed with the Commission an application asking the right to conduct regular route operations as a common carrier by motor vehicle of general commodities, with usual exceptions, over certain designated routes in southern Vermont, southwestern New Hampshire and northeastern Massachusetts.

This application, final action on which by the I. C. C. is the basis of this complaint, was referred to a joint board for hearing, and at the hearing the plaintiffs in this action were allowed to intervene, and opposed the application. The joint board issued a recommended report and order, after hearing, in April, 1945. The joint board's report and proposed order recommended that the application of Haigis and Nichols be denied. Thereafter, the applicants, Haigis and Nichols, filed exceptions to the recommended order of the joint board. After consideration of the transcript of the proceedings before the joint board, the joint board's recommended report and order, and the applicants' exceptions and the protestants' replies thereto, Division 5 of the Commission, on March 7, 1946, entered a report and order authorizing regular route operations by Messrs. Haigis and Nichols over certain parts of Massachusetts, Vermont and New Hampshire, thus substantially granting the Haigis-Nichols application.

On June 3, 1946, certain of the plaintiffs filed petitions for reconsideration by the full Commission of the report and order of Division 5. Upon consideration of the record of the proceedings and of the parties' arguments thereto, the full Commission, on November 4, 1946, denied the petitions for reconsideration.

On December 17 and 20, 1946, certain of the plaintiffs filed petitions for further hearing and consideration with the Interstate Commerce Commission. The basis of these petitions was to direct the Commission's attention to a prosecution instituted by the Commission on July 19, 1946 against Messrs. Haigis and Nichols in the United States District Court for the District of Massachusetts and the violation of the Commission's cease and desist order in the Gay's Express case hereinbefore referred to. This prosecution had resulted in a plea of guilty by Messrs. Haigis and Nichols. After consideration of this matter, the Commission denied the petition for reconsideration on February 10, 1947. On March 26, 1947, the plaintiffs again petitioned the Commission for further consideration of the records of this proceeding and for oral argument, on the main count that one of the applicants, i. e. Nichols, had indicated an intention to sell his operating rights upon issuance of the certificate of public convenience and necessity. After considering this matter, the Commission denied the petition on April 7, 1947, and on

April 16, 1947 the Commission issued the certificate of public convenience and necessity authorizing the regular route operations about which the plaintiffs complain.

The complaint starting this action was filed on December 31, 1947. The plaintiffs, in their complaint, claim that the final order of the Commission is arbitrary and capricious because there was no substantial evidence on which the Commission could—(a) Have found that Messrs. Haigis and Nichols were fit, willing and able to operate the route if their application was granted; (b) have found that the proposed service will be required by present or future public convenience and necessity; (c) have found that the plaintiffs did not offer adequate services for the transportation of general commodities, particularly in view of past war conditions.

The plaintiffs further claim that the final order of the Commission was arbitrary and capricious because—(a) It refused to hear or consider evidence as set forth in a petition for a re-hearing, of a criminal conviction of Haigis and Nichols in June, 1946 in the United States District Court for the District of Massachusetts for illegal operations and violation of a cease and desist order; (b) It refused to hear or consider certain evidence set forth in a petition for rehearing, tending to indicate that Haigis and Nichols did not intend to comply with the terms in their certificate of public convenience and necessity because Nichols desired to procure the certificate in order that he might sell it.

(1) The plaintiffs' claim that the Commission was arbitrary and capricious in finding that the proposed service of Haigis and Nichols was required by the present or future public convenience and necessity is completely untenable.

This Court must sustain the Commission if its findings are supported by substantial evidence on the record considered as a whole. Universal Camera Corp. v. N.L.R.B. 340 U.S. 474, 493, 71 S.Ct. 456; Capital Transit Company v. United States, D.C., 97 F.Supp. 614, 618. That they were is apparent of record provided Exhibit 7 was properly received in

evidence. There was oral testimony by representative shippers to show the need for the services and that, despite the fact that competitive services were available to supply the need partially, such services were inferior to those of the applicants. Exhibit 7 shows that the applicants carried approximately 8,000 shipments over the routes in question between January 14, 1940, through June 19, 1944, and the objection to it was that this transportation was not in accordance with the certificate they held under "grandfather" rights. However, the Commission found that these operations were conducted in good faith and if that finding is supportable, Exhibit 7 was properly received and considered. Crichton v. United States, D.C., 56 F.Supp. 876; A. B. & C. Motor Transp. Co. v. United States, D.C., 69 F.Supp. 166. It was based upon findings made by the Commission in prior proceedings before it in which one of the plaintiffs and Haigis and Nichols were parties and in which that issue was raised and decided. Gay's Express, Inc. v. Haigis and Nichols, 43 M.C.C. 277. The effect of the decision was that Haigis and Nichols had conducted these operations in good faith in the belief that they were within their rights. The Commission could take notice of its own records. National Fire Ins. Co. of Hartford v. Thompson, 281 U.S. 331, 336, 50 S.Ct. 288, 74 L.Ed. 881; Nahtel Corp. v. West. Virginia Pulp & Paper Co., 2 Cir., 141 F.2d 1; Crichton v. United States, supra. It is not circumscribed by strict rules of evidence, Interstate Commerce Comm. v. Louisville & N. R. Co., 227 U.S. 88, 93, 33 S.Ct. 185, 57 L.Ed. 431. Moreover, the applicants were not seeking to show "grandfather" rights under Section 306 (a) of Title 49 U.S.C.A. which must be supported by "bona fide" operations before June 1, 1935. Instead, they sought to obtain an amplified certificate under 49 U.S.C.A. § 307 (a). That requires proof (1) that the applicant is fit, willing and able to perform the proposed service and (2) that this service is, or will be, required by the present or future public convenience or necessity. As to (1) the character of the applicants is pertinent and their past con-

duct is revealing but as to (2) the paramount consideration is what services the public does, or will, need and as to that it is the kind and amount of the transportation which has been used rather than the conduct of the applicants which is relevant. Crichton v. United States, supra.

■ Certainly, on this evidence, the Commission's findings of public convenience and necessity was fully justified since this evidence was bulwarked by additional oral testimony. The Commission, with its expert judgment in this field, is the trier of facts. United States v. Pan American Petroleum Corp., 304 U.S. 156, 158, 58 S.Ct. 771, 82 L.Ed. 1262; United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 482, 62 S.Ct. 722, 86 L.Ed. 971; Capital Transit Company v. United States, D.C., 97 F.Supp. 614, 618.

(2) The plaintiffs also complain that the decision of the Commission was arbitrary and capricious in ruling that Haigis and Nichols were fit, willing and able. Again, the gist of the plaintiffs' attack on this finding is that Haigis and Nichols were unfit because they had carried on extensive illegal operations between January, 1940 and June, 1944. The plaintiffs have made no claim anywhere in this case that Messrs. Haigis and Nichols were not *able* to carry on these operations, but the plaintiffs say they are not *fit* to carry on these operations because of their illegally conducted operations.

■ It could consider its findings in the Gay's Express case as a piece of evidence bearing on the fitness of Messrs. Haigis and Nichols to conduct the operations sought. Indeed the plaintiffs raised no question that Haigis and Nichols were not able financially to conduct the proposed service. Their claim is that Haigis and Nichols were not fit because of the illegally conducted operations. This Court cannot say that the Commission was arbitrary and capricious in finding that Haigis and Nichols were fit and able financially and otherwise to properly conduct the proposed service. There is substantial evidence on the whole record to substantiate this finding, and the Commission is the trier of the fact. United States v. Carolina Freight Carriers Corp., supra.

■ (3) The plaintiffs' contention that the Commission erred in finding that the plaintiffs did not offer adequate services for the transportation of general commodities, particularly in view of past war conditions, is untenable. The Commission did not set forth the conclusion alleged in the plaintiffs' complaint in this matter. The Commission stated in its report that: "While competitive services are to some extent available, shippers found fault with them because of delayed pick-ups, their irregularity, or the inability of such carriers to furnish equipment". This conclusion is substantially supported by evidence. The Commission further found that: "The evidence indicates that these conditions were extant even in the pre-war period and did not stem wholly from war conditions". There is sufficient evidence in the record to warrant such a finding by the Commission. It is not required to deny such an application unless it finds an actual inability on the part of the plaintiffs to render complete service. United States v. Detroit & Cleveland Navigation Co., 326 U.S. 236, 240, 66 S.Ct. 75, 90 L.Ed. 38; Interstate Commerce Comm. v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051. The grant to the plaintiffs of their operating rights was in no sense, the grant of a monopoly. North Coast Transp. Co. v. United States, D.C., 54 F.Supp. 448; 451. Under the Motor Carrier Act, 49 U.S.C.A. § 301 et seq., there is no vested right on the public highway for any transportation business conducted on the highways. Capital Transit Company v. United States, D.C., 97 F.Supp. 614, 620. An increase in competition is no reason for denying the Commission's authority to issue a certificate. A. B. & C. Motor Transp. Co. v. United States, D.C., 69 F.Supp. 166, 169. The Commission was, and is, acquainted with the impact of the war upon facilities for transportation and upon the transportation business in general. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535, 66 S.Ct. 687, 90 L.Ed. 821.

The decision on this point was clearly and peculiarly in the province of the Commission.

▬▬▬ (4) The claim of the plaintiffs that the final order of the Commission was arbitrary and capricious because it refused to hear or consider evidence as set forth in a petition for rehearing of a criminal conviction of Haigis and Nichols in June, 1946, for illegal operations and violations of a cease and desist order, cannot be sustained. As has been pointed out, the Commission found, in the case of Gay's Express, Inc. v. Haigis and Nichols, 43 M.C.C. 277, that certain operations conducted by Haigis and Nichols between January 14, 1940 and June 19, 1944 were illegal but were carried on in good faith by Haigis and Nichols. It issued a cease and desist order in the Gay's Express case, which became effective August 15, 1944. The criminal conviction covered certain operations of Haigis and Nichols between the period August 16, 1944 and June, 1945. We take it for granted that the violation of this order which was the basis of the indictment to which they pleaded guilty shows that their unlawful operations after August 15, 1944 were not carried on in good faith. But their plea was not an admission that the prior operations covered by Exhibit 7 were not conducted in the honest belief that they were lawful. Consequently, it was for the Commission to determine whether these criminal proceedings were of sufficient probative force as to the fitness of the applicants to require the granting of the petition for rehearing. The general rule is that rehearings before administrative bodies are addressed to their own discretion. Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 515, 64 S.Ct. 1129, 88 L.Ed. 1420. Only a showing of the clearest abuse of discretion can sustain an exception to this rule. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535, 66 S.Ct. 687, 90 L.Ed. 821. It is indeed difficult to understand how a violation of the Commission's cease and desist order that took place between August 16, 1944 and June, 1945 could have much relevant bearing on the good faith of Haigis and Nichols in operations carried on, albeit illegally, but under color of "grandfather" rights between January, 1940 and June, 1944. Certainly there is no clear abuse of discretion, and certainly the complaint of the plaintiffs on this ground cannot be sustained.

▬▬▬ (5) The plaintiffs' last claim is that the final order of the Commission was arbitrary and capricious because the Commission refused to hear or consider certain evidence set forth in a petition for a rehearing, which tended to indicate that Haigis and Nichols did not intend to comply with the terms in their certificate of public convenience and necessity because Nichols desired to procure the certificate in order that he might sell it. On November 19, 1946, Nichols wrote a letter to the Commission in which he indicated a desire to sell his interest in the business when and if the certificate was finally granted. However, the mere fact that one of the two parties may desire to sell his share of the certificate of public convenience and necessity is not proof that there is no public necessity or need for the service. The operations may still be conducted by the other party, and certainly, under the law, before any sale can be had, the Commission must be satisfied that the purchaser is fit and able to conduct the operations authorized. This Court cannot say that the Commission erred in refusing to grant that petition.

We find that the findings of fact by the Commission are supported by substantial evidence and they are adopted, and by reference, appended hereto. We approve the Commission's conclusions of law and hold that its order is within its jurisdiction and is valid.

Complaint dismissed.

### Findings of Fact

The plaintiffs, less the Boston and Maine Railroad, are the holders of certificates of public convenience and necessity, under the terms of which each is authorized to transport freight by motor over routes which include routes serving southern Vermont, southwestern New Hampshire and northeastern Massachusetts. The plaintiff, Boston and Maine Railroad, serves the same area, amongst other areas, by rail.

The defendants, Marvin J. Haigis and Kneeland J. Nichols, doing business as Tri-State Motor Lines, are the holders of a certificate of public convenience and necessity, dated February 15, 1941, under the terms of which they were authorized to transport general commodities, with usual exceptions, over irregular routes between Brattleboro, Vermont, on the one hand, and on the other, points and places in New Hampshire, Vermont and Massachusetts. Hereinafter, this defendant will be referred to as "Haigis and Nichols", and defendant Interstate Commerce Commission will be referred to as the "I. C. C."

On May 12, 1944, defendants Haigis and Nichols filed with the I. C. C. an application asking the right to conduct regular route operations as a common carrier by motor vehicle of general commodities, with usual exceptions, over certain designated routes in southern Vermont, southwestern New Hampshire and northeastern Massachusetts. This application was referred to a joint board for hearing, and at the hearing the plaintiffs in this action were allowed to intervene, and opposed the application. In April, 1945, the joint board issued a recommended report and order which would deny the application of Haigis and Nichols. To this recommended report and order Haigis and Nichols filed exceptions. After consideration of the transcript of the proceedings before the joint board, the joint board's recommended report and order, and the applicants' exceptions and the protestants' replies, on March 7, 1946, Division 5 of the I. C. C. entered a report and order authorizing regular route operations substantially as applied for by Haigis and Nichols. On June 3, 1946, certain of the plaintiffs filed petitions asking re-consideration by the full Commission of the report and order of Division 5. Upon consideration of the record of the proceedings and of the parties' arguments thereto, on November 4, 1946, the full Commission denied the petitions for reconsideration. On December 17 and 20, 1946, certain of the plaintiffs filed petitions for further hearing and consideration with the I. C. C. The basis of these petitions was to direct the Com-

mission's attention to a prosecution instituted by the Commission on July 19, 1946 against Haigis and Nichols in the United States District Court for the District of Massachusetts and to the resulting plea of guilty thereto by Haigis and Nichols. After consideration, on February 10, 1947, the Commission denied these petitions for reconsideration. On March 26, 1947, the plaintiffs again petitioned the Commission asking further consideration of the record and for oral argument. The basis for this petition was that one of the applicants, i. e. Nichols, had indicated an intention to sell his operating rights upon issuance of the certificate of public convenience and necessity. After consideration, on April 7, 1947, the Commission denied this petition. On April 16, 1947 the Commission issued the certificate of public convenience and necessity authorizing Haigis and Nichols to conduct the regular route operations substantially as sought.

### Conclusion of Law

An order will be entered dismissing the complaint herein.