**DIXIE CARRIERS, Inc., Coyle Lines Incorporated, American Barge Line Company, Federal Barge Lines, Inc., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**The New York Central Railroad Company, Chicago & Eastern Illinois Railroad Company, Illinois Terminal Railroad Company, and Wabash Railroad Company, Intervening Defendants.**

**Civ. A. No. 8171.**

United States District Court,
S. D. Texas, Houston Division.

Dec. 31, 1954.

Donald Macleay (Macleay & Lynch), Washington, D. C.; for plaintiffs Dixie Carriers, Inc., and Coyle Lines, Inc.

Richard J. Hardy and Nuel D. Belnap (Belnap & McAuliffe), Chicago, Ill., for plaintiffs American Barge Line Co. and Federal Barge Lines, Inc.

E. V. Greenwood and Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for all plaintiffs.

Stanley N. Barnes, Asst. Atty. Gen., and Malcolm R. Wilkey, U. S. Atty., Houston, Tex., and Edward M. Reidy, Chief Counsel, Washington, D. C., and Samuel R. Howell, Asst. Chief Counsel and Leo H. Pou, Washington, D. C., for defendants the United States of America and the Interstate Commerce Comm.

John A. Daily, Chicago, Ill., and Palmer Hutcheson, Jr., (Hutcheson, Taliaferro & Hutcheson) Houston, Tex., for intervenors New York Central Railroad Co., Chicago and Eastern Illinois Railroad Co., Illinois Terminal Railroad Co., and Wabash Railroad Co.

E. V. Greenwood and Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., John H. Eisenhart, Jr., Washington, D. C., for intervening plaintiff American Waterways Operators, Inc.

Before HUTCHESON, Chief Circuit Judge, and CONNALLY and KENNERLY, District Judges.

KENNERLY, District Judge.

This is a suit by Plaintiffs, Dixie Carriers, Inc., Coyle Lines Incorporated, American Barge Line Company and Federal Barge Lines, Inc., against the Interstate Commerce Commission (for brevity called Commission) and the United States of America, Defendants. The New York Central Railroad Company, the Chicago and Eastern Illinois Railroad Company, the Illinois Terminal Railroad Company and the Wabash Railroad Company have intervened on the side of Defendants and are referred to as Intervening Defendants. The American Waterways Operators, Inc., have also intervened on the side of Plaintiffs and are referred to as Intervening Plaintiffs. The trial was before a three-judge-court convened under Sections 2284 and 2325 of Title 28, U.S.C.A.

Plaintiffs moving under the Interstate Commerce Act, as amended by the Transportation Act of 1940 respecting water carriers, 49 U.S.C.A. § 901 et seq., complain of and seek to enjoin, set aside and annul an order of the Commission with respect to rail rates, barge rates and rail-barge rates on sulphur from sulphur mines in Texas and approximately 60 miles from Galveston, Texas, but described as being in the Galveston area, through East St. Louis, Illinois, to Danville, Illinois. Specifically, Plaintiffs sought in their application before the Commission to have established a through barge-rail route and a joint through barge-rail rate for sulphur from Galveston, Texas, to Danville, Illinois, via East St. Louis, i. e. by barge from Galveston to East St. Louis, and by rail from East St. Louis to Danville. Plaintiffs claimed that the establishment of such route and rate was necessary and desirable in the public interest and that the failure and refusal to establish same discriminated against them as connecting carriers. The order complained of which denied Plaintiffs' application to the Commission was entered in a proceeding before the Commission entitled American Barge Line Company v. Chicago & Eastern Railroad Company, I.C.C. Docket No. 30731, reported in 287 I.C.C. 403 and 291 I.C.C. 422.

Among the several persons who were parties to, intervened in or took part in the hearings before the Commission there were no shippers nor consumers of sulphur. There was one intervenor, the American Waterways Operators, Inc., who appeared on behalf of the "inland water carriers generally throughout the United States", and the Galveston Chamber of Commerce intervened, was represented at the hearings, but did not otherwise participate in the proceedings. But no one purported to participate in the proceedings on behalf of or in the interest of the public generally.

The facts are not greatly if at all in dispute, and are fully shown by the Record. They may be briefly summarized substantially as follows:

(a) Plaintiffs here, who were the complainants in the proceeding before the Commission, are common carriers by water, operating under certificates of public convenience and necessity issued by the Commission. The American Barge Line Company and the Inland Waterways Corporation, operating Federal Barge Lines, render common carrier barge service on the Mississippi River between (among others) Port Sulphur (near New Orleans, Louisiana) and New Orleans, Louisiana on the one hand, and East St. Louis, Illinois, on the other hand, a distance of approximately 1,049 miles. The Coyle Lines, Incorporated, and Dixie Carriers, Inc., render common carrier barge service from Galveston, Texas, to New Orleans, Louisiana, a distance of approximately 357 miles. Each of the Intervening Defendants operate rail lines from East St. Louis, Illinois, to Danville, Illinois, a distance of approximately 184 miles. The Intervening Plaintiff, the American Waterways Operators, Inc., is here because of its interest in the legal questions involved.

(b) The volume of sulphur movement from the mines in Texas to

Danville, Illinois, is approximately 20,000 tons a year. During the last six months of 1950, the preponderance of the sulphur traffic from Galveston to Danville moved by rail to Galveston, by barge to East St. Louis, and by rail beyond. That movement, however, was by a contract water carrier which has since discontinued operation. Thereafter the sulphur moved from the mines, not through Galveston nor over Plaintiffs' lines, but on a joint through rate over an all-rail route, i. e. from the mines over the lines of the Texas and New Orleans Railroad Company directly to Shreveport, Louisiana, the Texas and Pacific Railway Company to Texarkana, Arkansas, the Missouri-Pacific Railroad Company (Guy A. Thompson, trustee) to East St. Louis, and the Wabash Railroad Company to Danville. The distance over that route from the sulphur mines is approximately 850 miles to East St. Louis, and is approximately 184 miles from East St. Louis to Danville, making a total distance of 1,034 miles from the sulphur mines to Danville. As stated, the sulphur mines are in the Galveston area, but the distance from them to the port of Galveston is approximately 60 miles.

(c) The all rail joint through rates on sulphur (Galveston rate) from the sulphur mines to Danville is $9.184 per ton. The Commission found these rates to be on a "depressed basis" in that the combination local rates which would apply in the absence of such joint through rates is $11.686 or $2.502 higher than such joint rates. Such combination local rates are made up of rates of $8.736 from the mines to East St. Louis, and a local rate of $2.95 from East St. Louis to Danville.

(d) There are no joint barge-rail rates in effect either from the sul-phur mines or from Galveston to Danville or any other point.[1] The combination barge-rail rate on sulphur from Galveston to Danville is $8.27, composed of Plaintiffs' joint barge rate of $5.32 from Galveston to East St. Louis and Intervening Defendants' rail rate of $2.95 from East St. Louis to Danville. The combination rate of $8.27 does not include unloading and loading and switching charges, etc., at East St. Louis. However, barge lines absorb, or are willing to absorb such charges at East St. Louis. Such charges are for unloading the barges 44 cents a ton, the switching charges are approximately 30 cents a ton, and other charges are approximately 15 cents a ton.

The price of sulphur at Galveston is $1.50 a ton higher when loaded in barges than when loaded in rail cars 60 miles away at the mines. The higher price reflects in part the rail rate of $1.10 per ton from the mines to Galveston, 11 cents for wharfage, 37 cents for unloading from cars to storage bins, 22 cents for transfer from bins to barges, 4.55 cents for stevedoring, and 1.41 cents for pier rental. Such combination rate does not include and the barge lines do not absorb this Galveston item of $1.50 per ton.

(e) Complainants proposed and were refused the establishment of a joint through route and a joint through barge-rail rate of $7.57 for sulphur, not from the sulphur mines but from Galveston to Danville, to be divided $5.41 for the barges lines from Galveston to East St. Louis, and $2.26 for the rail lines from East St. Louis to Danville. The rate was arrived at by adding $1.01 to the Port Sulphur to Danville rate of $6.66. This proposal contemplated that the barge lines would absorb the charges mentioned at East St. Louis but there was no such commit-

---

1. See Thompson v. United States, 343 U.S. 549, 558, 72 S.Ct. 978, 96 L.Ed. 1134, for a discussion of through routes, etc.

ment respecting the $1.50 charge mentioned at Galveston.

1—The case involves a construction of the Interstate Commerce Act as amended by the Act of 1940 respecting water carriers, 49 U.S.C.A. § 901 et seq. Plaintiffs claimed before the Commission and claim here that under such Act the combination rates and charges on sulphur over barge-rail route from Galveston, Texas, through East St. Louis, Illinois to Danville, Illinois, were unreasonable, that they discriminated against Plaintiffs, and that the public interest required that a through barge-rail route and joint through barge-rail rates be established with reasonable differentials, etc.

The Commission, after a full hearing (Reports of December 22, 1952, and January 19, 1954) dismissed Plaintiffs' complaint.

■ Defendants' first contention here is that the findings and conclusions of the Commission are fully supported by the evidence, that its findings are adequate and in full accord with the Act and that its Order should not be set aside here. We agree that this is true.

■■ Congress has with wholesome care clothed the Commission with the power and made it its duty after, as here, a full hearing to determine when existing rates are discriminatory, where and under what circumstances through routes and through rates should be established, etc. The Commission is given wide discretion and when its findings and conclusions are, as here, supported by the evidence and in accordance with the Act they will not be disturbed by the courts. Alabama Great Southern R. R. Co. v. United States, 340 U.S. 216, 71 S.Ct. 264, 95 L.Ed. 225; Capital Transit Co. v. United States, D.C., 97 F.Supp. 614; Interstate Commerce Commission **v.** rate.[2]

Mechling, 330 U.S. 567, 67 S.Ct. 894, 91 L.Ed. 1102; McLean Trucking Co. v. United States, 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544; Mississippi Valley Barge Line v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260; United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821; Interstate Commerce Commission v. Union Pacific R. R., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308; Virginia Ry. Co. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L. Ed. 463; Western Paper Makers' Chemical Co. v. United States, 271 U.S. 268, 46 S.Ct. 500, 70 L.Ed. 941; Ayrshire Collieries Corporation v. United States, 335 U.S. 573, 69 S.Ct. 278, 93 L.Ed. 243.

2—We have, however, independently of the conclusions reached by the Commission, considered the Record and reached substantially the same conclusion.

As we have pointed out, the Commission in determining the questions was required and we are required to consider not only Plaintiffs' desire for and interest in a through barge-rail route and through joint rate, but the effect thereof if established upon all others concerned. This rule is well stated in Ayrshire Corporation v. United States, 335 U.S. 573, 69 S.Ct. 278, 288, 93 L.Ed. 243, where in considering the rates for the transportation of coal, it is said:

"Rate structures are not designed merely to favor the revenues of producers and carriers. The Commission has the consumer interest to safeguard as well. And when it undertakes to rationalize the interests of the three, great complexities are often encountered." etc.

The Commission doubtless had in mind this rule when it considered, as we have, the effect of the establishment of the proposed through route and joint rate.[2]

2. The Commission says:
"In reaching our conclusions herein we are not unmindful of the provisions of the national transportation policy which call for fair and impartial regulation of all modes of transportation subject to the act, so administered as to recognize and preserve the inherent advantages of each. We do not believe, however, that this policy requires us to force rail carriers, where they maintain a depressed rate to meet water competition to further depress

We also attach importance to the fact, as did the Commission, that only Plaintiffs and one Intervenor took part in the proceedings before the Commission, and only Plaintiffs and such Intervenor are here seeking the establishment of such route and rates. No shipper nor consumer of sulphur nor other person is making common cause with Plaintiffs.[3]

We also point to the route which shipments of sulphur would follow in Plaintiffs' suggested through barge-rail route and through joint rate, i. e. by barge from Galveston to East St. Louis and by rail from East St. Louis to Danville, with no provision made for the $1.50 per ton cost and expense of transportation from the sulphur mines to Galveston and of loading, unloading, etc. there. While Plaintiffs are willing to absorb charges of loading, unloading, etc., at East St. Louis, there is nothing to indicate that they are willing to absorb such Galveston charges.

Also, the Commission and we have compared the proposed joint barge-rail rate and the movement of sulphur thereunder with the other rates discussed herein, and the movement of sulphur thereunder. Although it is mandatory that the Act must be so administered as to recognize and preserve the inherent advantages of all modes of transportation, including water transportation, we discover here no violation or deviation from this rule. There is nothing in the record indicating that the refusal of the Commission to grant Plaintiffs' request or to approve the route and rate requested by Plaintiffs failed to preserve the advantages and rights of all parties. When the whole record is considered in the light of all the provisions of the Act and many cases construing same, we think Plaintiffs' have not shown their claim of discrimination to be meritorious. Nor is there merit in Plaintiffs' claim that the establishment of the proposed through route and joint through rate is in the public interest. Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333; Interstate Commerce Commission v. City of Jersey City, 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420; Interstate Commerce Commission v. Mechling, supra; Thompson v. United States, 343 U.S. 549, 72 S.Ct. 978, 96 L.Ed. 1134; United States v. Great Northern Ry. Co., 343 U.S. 562, 72 S.Ct. 985, 96 L.Ed. 1142.

3—Plaintiffs strongly press upon us the decision of the Supréme Court in the Mechling case, I. C. C. v. Mechling, supra [330 U.S. 567, 67 S.Ct. 898]. That Court there uses this language:

"Judicial review of the findings of fact and the expert judgments of the Interstate Commerce Commission where the Commission acts within its statutory authority is extremely limited. And § 307(d) of the 1940 Act authorizes the Commission 'in the case of a through route' to 'prescribe such reasonable differentials as it may find to be justified between all-rail rates and the joint rates in connection with such common carrier by water.' Cf. Unit-

their earnings on the traffic in order to favor the same form of competition. Danville is 184 miles from the end of the barge-line service, and the rail rate for the 184-mile haul is depressed at least from 13.5 to 9.2 percent of first class. If the barge lines can reasonably be expected to participate in this movement, the opportunity to do so should be afforded, not by the establishment of a through barge-rail rate differentially under an all-rail adjustment which is already severely depressed, but by a reduction in the barge rate from Galveston to East St. Louis, or by an increase in the depressed rail rate, or both. There is no allegation here that the all-rail rate, or any factor thereof, is unreasonably low." (Com.1st Report, p. 407.)

3. The Commission says:
"As stated, no shipper has evidenced an interest in the establishment of the rate sought, and the rate over the all-rail route which it is intended to meet is on a depressed basis. The defendants urge that their participation in barge-rail routes, as desired by complainants, is not shown to be necessary or desirable in the public interest." (Com.1st Report, p. 406.)

ed States v. Chicago Heights Trucking Co., 310 U.S. 344, 352, 353, 60 S.Ct. 931, 935, 936, 84 L.Ed. 1243; Board of Trade of Kansas City v. United States, 314 U.S. 534, 546, 62 S.Ct. 366, 372, 86 L.Ed. 432. But the congressional debates and committee reports on the 1940 Act and the statutory provisions which emerged from this legislative background show that Congress enunciated positive policies and specific limiting standards which it expected the Commission to follow in fixing rates, including 'differentials' between all-rail and water-rail rates. The provisions of the Transportation Act of 1940 which brought water carriers under Interstate Commerce Commission jurisdiction were vigorously opposed in Congress by those who feared that the Commission might raise barge rates in order to enable railroads better to compete with inherently cheaper water transportation. These opponents were repeatedly assured by sponsors of the 1940 Act who advocated Commission regulation of water transportation that the questioned legislation unequivocally required the Commission to fix rates which would preserve for shippers the inherent advantages of barge transportation: lower cost of equipment, operation, and therefore service." etc.

It then held that under the facts in that case the Order of the Commission should not be permitted to stand because not based on adequate findings and evidence. But the facts there greatly differ from the facts here. Here, as has been pointed out, there is neither a showing that Plaintiffs' suggested route and rate is in the public interest, nor that it is fair to shippers, consumers and the public generally. Neither have Plaintiffs shown that the existing rates discriminate against them.

The case of Alabama Great Southern R. R. Co. v. United States, supra [340 U.S. 216, 71 S.Ct. 271], was one where, as here, the Commission was called upon to establish through routes and joint through rates, and where the Court citing the Ayrshire case points out that the Commission has to safeguard the interests of the shipper and consumer as well as those of the carrier, etc. In speaking of the Mechling case, the Court uses this language:

"Appellants also contend that the prescription of differentials in this proceeding deprives them of their inherent advantages contrary to the National Transportation Policy. They point to I. C. C. v. Mechling, 330 U.S. 567, 67 S.Ct. 894, 91 L.Ed. 1102, as having established the principle that the lower costs of the barge carrier there involved was an inherent advantage, and that the Commission had no discretion to approve a rate structure which would reduce such advantage. They argue that the 'fair and impartial regulation' called for by the National Transportation Policy demands that the rule of the Mechling case be applied impartially to protect the 'inherent advantage' of the rail carriers here.

"In the Mechling case, the Commission had fixed a rate for transportation of wheat east by rail from Chicago at a rate higher if it arrived in Chicago by barge than if by rail or lake. This was a plain case of discrimination. There were different rates provided for equal service without any showing that any additional service was rendered for the additional charge. Here the question is whether the barge lines may charge less than the railroads for the different service they render. There is no unlawful discrimination here as there was in the Mechling case. The differentials providing a lower rate for barge service do not constitute an 'unjust discrimination' by express proviso of § 305(c) of the Act. 54 Stat. 935, 49 U.S.C. § 905(c)."

We believe the Mechling case is not controlling here.

From what has been said it follows that judgment should be and is entered here for Defendants. Let appropriate decree be drawn and presented.