**STANISLAUS COUNTY, a political subdivision of the State of CALIFORNIA, and Stanislaus County Chamber of Commerce, a non-profit organization, Plaintiffs,**

**v.**

**UNITED STATES of America, a sovereign body politic, and The Interstate Commerce Commission, Defendants, and The Atchison, Topeka and Santa Fe Railway Company et al., Intervening Defendants.**

**Civ. No. 7834.**

United States District Court
N. D. California, N. D.

Dec. 12, 1960.

Tom B. Markley, San Francisco, Cal., for plaintiffs.

Victor R. Hansen, Asst. Atty. Gen., James E. Kilday and John H. D. Wigger, Dept. of Justice, Washington, D. C., Lynn J. Gillard, U. S. Atty., and Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for defendant United States.

Robert W. Ginnane, Gen. Counsel, and Arthur J. Cerra, Asst. Gen. Counsel, I. C. C., Washington, D. C., for defendant Interstate Commerce Commission.

Charles W. Burkett, Jr., John Mac-Donald Smith, San Francisco, Cal., Edward M. Reidy, Washington, D. C., for intervening defendants.

Before MERRILL, Circuit Judge, and HALBERT and BURKE, District Judges.

PER CURIAM.

This three-judge Court was convened in accordance with Title 28 U.S.C. § 2284

and § 2325, to hear and determine this action, in which plaintiffs seek to have an order of the defendant Interstate Commerce Commission (hereafter in this memorandum referred to as the ICC) annulled and set aside. Jurisdiction is conferred upon this Court by Title 28 U.S.C. § 1336.

Plaintiffs filed a complaint before the ICC, charging the intervening defendant railroads with having made and published rates unduly prejudicial to Stanislaus County and unduly preferential to the neighboring Counties of San Joaquin, Contra Costa, Alameda, and Santa Clara (hereafter in this memorandum referred to as the "preferred area") in violation of Title 49 U.S.C.A. § 3(1).[1]

The trial examiner for the ICC filed a report recommending that the ICC find the rates of which complaint is made to be unlawfully prejudicial to Stanislaus County and unlawfully preferential to the "preferred area," and that the ICC issue an order directing the defendant railroads to remove the unlawful prejudice and preference.

After hearing oral argument and considering the briefs, the ICC found that the rates of which complaint is made had not been shown to be unduly preferential or prejudicial as alleged, and dismissed the complaint (302 I.C.C. 365).

■ It is conceded that plaintiffs have fully exhausted their administrative remedies. The scope of review in this case is fixed by Title 5 U.S.C.A. § 1009(e) (Administrative Procedure Act). The Court must review the whole record, including the examiner's proposed report (Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456), but the Court may not inquire as to the soundness of the ICC's reasoning within its competence, the wisdom of its decision, or the consistency of its decision with prior decisions made by it (Georgia Public Service Commission v. United States, 283 U.S. 765, 51 S.Ct. 619, 75

L.Ed. 1397. And see: Kentucky Broadcasting Corp. v. Fed. Communications Comm., 84 U.S.App.D.C. 383, 174 F.2d 38).

Intervening defendant railroads argue that the last paragraph of the ICC's report contains the finding of ultimate fact, which this Court must uphold if it is sustained by the evidence. That paragraph is as follows:

"We find that the rates assailed are not shown to be unduly prejudicial or preferential as alleged. The complaint will be dismissed."

■ The ICC is required to report the facts and give the reasons for its conclusions (Beaumont, S. L. & W. Ry. v. United States, 282 U.S. 74, 51 S.Ct. 1, 75 L.Ed. 221). A general statement in the language of the statute is not sufficient to support the order in the absence of supporting findings of fact (State of Florida v. United States, 282 U.S. 194, 213, 51 S.Ct. 119, 75 L.Ed. 291).

■ The defendant United States and the ICC contend that the order contains a narrative report of the facts on which the decision of the ICC is based. Findings in narrative form may be a sufficient compliance with the ICC's duty to report the facts (Capital Transit Co. v. United States, D.C., 97 F.Supp. 614), but the Court must review these findings as directed by Title 5 U.S.C.A. § 1009(e).

■ There is no dispute involved as to the abstract reasonableness of the rates in dispute, such as might be presented under Title 49 U.S.C.A. § 1. It is a question of relative reasonableness that is presented, and if the rates are found to be unlawfully preferential or prejudicial, the disparity may be removed by raising one rate, lowering another, or adjusting both (Texas & Pacific Ry. Co. v. United States, 289 U.S. 627, 650, 53 S.Ct. 768, 77 L.Ed. 1410).

■ It is not disputed that a substantial disparity exists in the rates be-

---

1. These rates are for shipments between the Pacific Northwest and the Intermountain areas on the one hand, and Stanislaus County and the "preferred area" on the other.

148

tween Stanislaus County and the "preferred area." This disparity has not been justified on the basis of operating conditions or distance. The intervening defendant railroads contend that the finding that the rates are not shown to be unduly preferential implies that they are justified. If this reading of the report were correct, the findings of the ICC, so interpreted would be far too scanty and vague to support the conclusion (State of Florida v. United States, supra).

■ Defendant United States and the ICC, as well as plaintiffs, agree that the ICC found the disparity to be not "Unduly prejudicial or preferential," and did not reach the issue of justification (as to which issue the trial examiner found against intervening defendant railroads). If the ICC is to refuse plaintiffs' relief on the ground that the disparity is justified, it must first examine the disparity that exists in the light of the assertedly justifying conditions and determine whether the conditions justify that great a disparity (I.C.C. v. Mechling, 330 U.S. 567, 67 S.Ct. 894, 91 L.Ed. 1102; State of New York v. United States, 331 U.S. 284, 67 S.Ct. 1207, 91 L.Ed. 1492). As the ICC made no finding of justification, this Court can make no such finding for the ICC (Securities and Exchange Commission v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626). The decision of the ICC may, therefore, not be sustained on the basis that the rate disparity is in fact justified.

■ The intervening defendant railroads are willing to consider any request for adjustments, but where industries which are potential locators in Stanislaus County do not know this, Stanislaus County is just as much prejudiced as if the railroads intended to stand on their scheduled rates. It is a matter of right, not of grace by the railroads, that regions and shippers shall not be prejudiced or their competitors preferred (see State of New York v. United States, supra).

Moreover, this Court can only speculate as to the weight given by the ICC to the fact that the railroads are willing to negotiate. It appears that the ICC did not consider it necessary to reach a conclusion as to the legal effect of this fact, for the ICC report deletes the legal conclusion of the trial examiner that this fact is no defense, and it is not replaced by any conclusion drawn by the ICC.

Again, the Court can only speculate as to the conclusion of the ICC, as to whether evidence of competition between Stanislaus County and San Francisco and other Counties in the same group as the "preferred area" unduly broadened the issue, for again the ICC deleted the trial examiner's conclusion to the contrary, but did not express a conclusion that such evidence *did* unduly broaden the issues.

In several respects the significance of statements contained in the ICC report is difficult to grasp in the light of the record. For example, the applicability of the statements that, "General declarations as to competition, unsupported by evidentiary facts, and a mere showing of disparity of rates do not establish undue prejudice," and that there must be a "proven competitive relationship," is not clear. The narrative report of the ICC repeatedly shows the existence of competition.

Many witnesses testified that firms in Stanislaus County were in competition with firms from the "preferred area." They testified that the competing firms manufactured the same products or similar products, which compete on the market for the consumer's dollar, and that they either purchased raw material and shipped it to their plants at the rates complained of, or they shipped the finished product to the market under the rates in issue. The ability of one Stanislaus County firm to undersell its competitor was cut in half by the disparity of the rates,[2] while other competing "preferred area" firms priced Stanislaus County

2. Pohl Metal Products Company, of Oakdale in Stanislaus County. Its competitor in question is in San Francisco.

firms completely out of the market.[3] An industrial traffic manager testified that he was employed to recommend sites for new plant construction to various firms, and that Stanislaus County locations were not even considered, although otherwise suitable, because of the rates in question. It is undisputed that Stanislaus County is actively seeking industry, which in many cases locates in "preferred area" sites instead of locating in Stanislaus County. This fact clearly establishes the existence of competition between the two areas (State of New York v. United States, supra. And see: Kindel v. A. T. & S. F., 8 I.C.C. 608).

■ The ICC report contains the following two statements: "In some instances the competition met is local" (that is, local to the Pacific Northwest or the Intermountain area), and "Witnesses for three of the firms indicated that their competitive situations would be improved only by reductions to the level of the group rates." Yet each witness for a Stanislaus County firm indicated that he had competition from the "preferred area," or from the rest of the San Francisco group, and most of them from the "preferred area." In many cases, they *also* had local competition, but there is no requirement that all of a firm's or area's competitors be preferred to invoke Title 49 U.S.C.A. § 3(1). Such a rule would indeed emasculate the law.

No witness testified that his situation would be improved only by reduction of his own rates. One witness was asked, on cross-examination, if he would like a reduction, and he said, "Yes." Counsel did not pursue the subject. Other witnesses were asked, on cross-examination, if they would like a reduction, and they said, "Yes." They were then asked if a raising of the group area rates would improve their competitive situation as much as would a reduction, and they said, "Yes." They were then asked if such an increase would improve their competitive situation *vis-a-vis* competitors

from outside the "preferred area," and their answer was an obvious "No."

This Court does not conclude that it is beyond the power of the ICC to find the disparity of rates to be not "unduly preferential or prejudicial," on the basis of the record, but this Court does conclude that the findings of the report do not suffice to substantiate the conclusion. These findings are far too vague and scanty to explain what facts the ICC found, what legal conclusions it drew from these facts, and why. There is no sufficient bridge between the narrative statement of facts and the ultimate determination of no undue prejudice. This Court can have no way of reviewing the administrative conclusions. We do not know how the facts were appraised or how the various factors were weighed and balanced. We cannot say whether the result was arbitrary or was a proper exercise of administrative judgment. We have to speculate or substitute our own judgment as to what in the factual picture was important and should have been determinative in the light of the problem facing the ICC.

The order of the ICC will be annulled and set aside and the cause remanded for further consideration by the ICC, after which either express findings of fact in reasonable detail, and conclusions of law drawn therefrom, or a narrative report in which the findings and conclusions of the ICC are more clearly stated, should be prepared. "We must know what a decision means before the duty becomes ours to say whether it is right or wrong" (United States. v. Chicago, M., St. P. & P. Ry. Co., 294 U.S. 499, 55 S.Ct. 462, 467, 79 L.Ed. 1023).

Plaintiffs are directed to prepare all documents necessary and appropriate for the full and final disposition of this case in accordance with this memorandum and order, and lodge them with the Clerk of this Court pursuant to the applicable rules and statutes.

---

3. Altwalt Company, of East Modesto, Stanislaus County, and Stanislaus Food Products, of Modesto, Stanislaus County. Their competitors are in the "preferred area."