THOMPSON, TRUSTEE, MISSOURI PACIFIC
RAILROAD CO. *v.* UNITED STATES ET AL.

No. 513. Argued April 23, 1952.—Decided June 2, 1952.

*Toll R. Ware* argued the cause for appellant. With him on the brief were *T. T. Railey* and *Geo. W. Holmes.*

*Samuel R. Howell* argued the cause for the Interstate Commerce Commission, appellee. With him on the brief was *Daniel W. Knowlton.*

*Solicitor General Perlman, Assistant Attorney General Morison* and *Ralph S. Spritzer* submitted on brief for the United States, appellee.

*B. W. La Tourette* and *G. M. Rebman* submitted on brief for the Omaha Grain Exchange, appellee.

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

The sole question before the Court in this case concerns the content of the term "through route" as used in the Interstate Commerce Act.[1]

The question arises out of a controversy as to the shipment of grain to market from points in Kansas on the Central Branch of the Missouri Pacific Railroad. From Lenora, Kansas, a typical origin point, grain may be shipped eastward to the Kansas City market over Mis-

---

[1] 49 U. S. C. § 1 *et seq.*

souri Pacific lines via Atchison, Kansas, at a rate of 19 cents per hundred pounds. The Missouri Pacific also provides service from Lenora to Omaha, Nebraska, via Atchison, at the rate of 25.5 cents. Midway between Lenora and Atchison, at Concordia, Kansas, the Missouri Pacific connects with a line of the Chicago, Burlington & Quincy Railroad running in a northeasterly direction to Omaha. Concordia is listed by the carriers as a point for interchange of traffic and there is evidence that the Missouri Pacific and the Burlington offer through transportation via Concordia from Lenora to points on the Burlington line short of Omaha. But there is no evidence that any shipment has ever been made from Lenora to Omaha via the Burlington line or that the carriers have ever offered through service over that route, although the haul from Lenora to Omaha via the Burlington is approximately the same length as the haul from Lenora to Kansas City over the lines of the Missouri Pacific.

The Omaha Grain Exchange complained to the Interstate Commerce Commission that the rates published by appellant, Trustee for the Missouri Pacific, on grain shipped from Lenora and other Kansas origins are unreasonable and discriminate against Omaha in violation of Sections 1 and 3 of the Interstate Commerce Act.[2] In the complaint it was contended that the route to Omaha via Concordia and the Burlington line "is a practicable through route as provided in Section 15 of the Interstate Commerce Act, and that the rates to the market of Omaha should be no greater than the rates to the market of Kansas City."

Section 15 (3) of the Act provides that—

"The Commission may, and it shall whenever deemed by it to be necessary or desirable in the

---

[2] See 49 U. S. C. §§ 1 (5) (a), 3 (1).

public interest, after full hearing upon complaint or upon its own initiative without complaint, establish through routes, joint classifications, and joint rates, fares, or charges, applicable to the transportation of passengers or property by carriers subject to this part, . . . ." 54 Stat. 911, 49 U. S. C. § 15 (3).

The Commission's power to establish through routes is limited by a provision of Section 15 (4), quoted in the margin,[3] whenever such action would require a carrier to short haul itself. Under that Section, a carrier may be required to short haul itself only where its own line makes the existing through route "unreasonably long as compared with another practicable through route which could otherwise be established," or where the Commission makes special findings that a proposed through route "is needed in order to provide adequate, and more efficient or more economic, transportation." [4] Establishment of a new through route from Lenora to Omaha, via

---

[3] "In establishing any such through route the Commission shall not (except as provided in section 3, and except where one of the carriers is a water line) require any carrier by railroad, without its consent, to embrace in such route substantially less than the entire length of its railroad and of any intermediate railroad operated in conjunction and under a common management or control therewith, which lies between the termini of such proposed through route, (a) unless such inclusion of lines would make the through route unreasonably long as compared with another practicable through route which could otherwise be established, or (b) unless the Commission finds that the through route proposed to be established is needed in order to provide adequate, and more efficient or more economic, transportation: *Provided, however,* That in prescribing through routes the Commission shall, so far as is consistent with the public interest, and subject to the foregoing limitations in clauses (a) and (b), give reasonable preference to the carrier by railroad which originates the traffic. . . ." 54 Stat. 911–912, 49 U. S. C. § 15 (4).

[4] The short-hauling provisions are discussed and applied in *Pennsylvania R. Co.* v. *United States,* 323 U. S. 588 (1945).

the Burlington, would compel the Missouri Pacific to permit use of the Lenora-Concordia portion of its line in the new through route to Omaha in competition with the Missouri Pacific's own route from Lenora to Omaha via Atchison. As a result, establishment of a new through route as requested by the Omaha Grain Exchange admittedly invokes the restriction against short hauling in Section 15 (4).

The parties dispute whether, on the record in this case, there is sufficient basis for making the findings required by Section 15 (3) and (4) for the establishment of a through route. We do not reach this question because there was no attempt to make the inquiry and findings required by Section 15, the Commission finding that a through route from Lenora to Omaha via Concordia and the Burlington line was already in existence and, therefore, did not have to be "established." The Commission granted relief to the complainant Omaha Grain Exchange by finding that the sum of the local rate from Lenora to Concordia published by appellant and the local rate from Concordia to Omaha published by the Burlington (totaling 30 cents per hundred pounds) is an "unreasonable" rate over the route from Lenora to Omaha via the Burlington. Appellant was ordered to provide transportation of grain from Lenora to Omaha at rates not exceeding the rates charged by the Missouri Pacific on like traffic to Kansas City (19 cents). The Commission did not consider the reasonableness of the rate published by appellant for the route from Lenora to Omaha via Atchison, nor is there any finding that the local rate from Lenora to Concordia published by appellant is itself either unreasonable or discriminatory. 278 I. C. C. 519, affirming Division 2, 272 I. C. C. 368.

Appellant sued in the District Court to enjoin enforcement of the Commission's order on the sole ground that the Commission erred in finding the existence of a

through route from Lenora to Omaha via the Burlington with the result that the order, in effect, establishes a new through route without complying with the requirements of Section 15 (3) and (4) of the Act. A three-judge District Court, one judge dissenting, sustained the Commission's order and dismissed appellant's complaint. The District Court concluded that "evidence of physical interchange connection at Concordia, plus long established joint rates to some points on the Burlington short of Omaha, plus combination rates to Omaha," furnished sufficient evidentiary basis for the Commission's finding of the existence of a through route. 101 F. Supp. 48. The case is here on direct appeal. 28 U. S. C. (Supp. IV) § 1253.

Under the Interstate Commerce Act, a carrier must not only provide transportation service at reasonable rates over its own lines but has the additional duty "to establish reasonable through routes with other such carriers, and just and reasonable rates . . . applicable thereto." [5] Through routes may be, and ordinarily are, established by the voluntary action of connecting carriers. Since 1906, through routes may also be established by order of the Interstate Commerce Commission. In that year, Congress authorized the Commission to establish through routes "provided no reasonable or satisfactory through route exists." [6] In 1910, Congress first empowered the Commission to establish alternate through routes but restricted this power by adding the forerunner of present Section 15 (4) to prevent the Commission from establishing any through route requiring a carrier to short

[5] 49 U. S. C. § 1 (4).

[6] 34 Stat. 584, 590. In *I. C. C.* v. *Northern Pacific R. Co.*, 216 U. S. 538 (1910), this Court held that the restrictions on the Commission's power to establish through routes were judicially enforceable.

haul itself unless the existing route was unreasonably long compared to the proposed route.[7]

The Commission's effort to limit by construction the impact of the short-hauling restriction on its power to establish through routes was rejected by this Court in *United States* v. *Missouri Pacific R. Co.,* 278 U. S. 269 (1929). Following this decision, the Commission asked Congress to delete completely the short-hauling restriction.[8] In the Transportation Act of 1940, Congress refused to eliminate the restriction against short hauling, but adopted a compromise under which the restriction against short hauling was retained subject to a new exception applicable only where the Commission makes the special findings listed in the amended Section 15 (4).[9]

---

[7] 36 Stat. 539, 552. See S. Rep. No. 355, 61st Cong., 2d Sess. 9–10 (1910).

[8] The Commission first asked Congress to adopt the narrow construction of the short-hauling restriction rejected by this Court in *United States* v. *Missouri Pacific R. Co., supra.* Ann. Rep. I. C. C. (1929) 89; *id.* (1930) 97; *id.* (1931) 83–84, 121; *id.* (1932) 102. When the Federal Transportation Coordinator recommended that the short-hauling restriction be eliminated, S. Doc. No. 152, 73d Cong., 2d Sess. 92–94 (1934), the Commission urged Congress to follow the Coordinator's recommendation. Ann. Rep. I. C. C. (1937) 106; *id.* (1938) 122.

In the 74th Congress, S. 1636 and H. R. 5364 were introduced to enact the Commission's recommendation, the Senate bill was reported favorably, S. Rep. No. 1970, 74th Cong., 2d Sess. (1936), but no further action was taken. In the 75th Congress, similar bills were introduced, S. 1261 and H. R. 4341, the Senate bill was reported favorably, S. Rep. No. 404, 75th Cong., 1st Sess. (1937), and was passed by the Senate, 81 Cong. Rec. 8603 (1937), but no further action was taken.

[9] In the 76th Congress, bills to delete the short-hauling restriction were again introduced, S. 1085 and H. R. 3400. At the same time, the extensive revision of the Interstate Commerce Act which became the Transportation Act of 1940 was being considered. S. 2009. A

Confronted with this consistent legislative refusal to eliminate the short-hauling restriction on its power to establish through routes, the Commission justifies its order on the ground that a "through route" from Lenora to Omaha via the Burlington was already in existence. If the Commission has correctly applied the term "through route" in this case, the Commission's restricted power to "establish" through routes under Section 15 (3) and (4) is not relevant to this case. The statutory term "through route," used throughout the Interstate Commerce Act,[10] has been defined by this Court as follows:

> "A 'through route' is an arrangement, express or implied, between connecting railroads for the continuous carriage of goods from the originating point on the line of one carrier to destination on the line of another. Through carriage implies a 'through rate.' This 'through rate' is not necessarily a 'joint rate.' It may be merely an aggregation of separate rates fixed independently by the several carriers forming the 'through route'; as where the 'through rate' is 'the sum of the locals' on the several connecting lines or is the sum of lower rates otherwise separately established by them for through transporta-

Senate Committee included in its over-all revision the "through-routes provision long advocated by the Commission," S. Rep. No. 433, 76th Cong., 1st Sess. 6, 21–22 (1939), and the Transportation Act, so amended, was passed by the Senate. The Transportation Act as passed by the House did not provide for any change in Section 15 (4). The present form of Section 15 (4) emerged as Section 10 (b) of the Transportation Act of 1940. 54 Stat. 898, 911–912. See Conference Reports: H. R. Rep. No. 2016, 76th Cong., 3d Sess. 64–65 (1940); H. R. Rep. No. 2832, 76th Cong., 3d Sess. 70–71 (1940).

[10] 49 U. S. C. §§ 1 (4), 6 (1), 15 (3)(4)(8); 49 U. S. C. (Supp. IV) § 5b (4).

tion. *Through Routes and Through Rates,* 12
I. C. C. 163, 166." [11]

The Commission decision cited by the Court was sum-
marized as follows in the Commission's 21st Annual Re-
port to Congress:

> "A through route is a continuous line of railway
> formed by an arrangement, express or implied, be-
> tween connecting carriers. . . . Existence of a
> through route is to be determined by the incidents
> and circumstances of the shipment, such as the bill-
> ing, the transfer from one carrier to another, the
> collection and division of transportation charges, or
> the use of a proportional rate to or from junction
> points or basing points. These incidents named are
> not to be regarded as exclusive of others which may
> tend to establish a carrier's course of business with
> respect to through shipments." [12]

In short, the test of the existence of a "through route"
is whether the participating carriers hold themselves out
as offering through transportation service. Through car-
riage implies the existence of a through route whatever
the form of the rates charged for the through service.

In this case there is no evidence that any through trans-
portation service has ever been offered from Lenora to
Omaha via the Burlington.[13] The carriers' course of
business negatives the existence of any such through

---

[11] *St. Louis Southwestern R. Co.* v. *United States,* 245 U. S. 136,
139, note 2 (1917). See also *Great Northern R. Co.* v. *United States,*
81 F. Supp. 921, 924 (D. Del. 1948), affirmed, 336 U. S. 933 (1949).

[12] Ann. Rep. I. C. C. (1907) 75–76.

[13] Compare *Beaman Elevator Co.* v. *Chicago & N. W. R. Co.,*
155 I. C. C. 313 (1929), where the Commission held that proof of one
shipment on a through bill of lading over a certain route was not
sufficient to show the existence of a through route because that one
shipment was not representative of the carriers' course of business.

route. The fact that appellant's line connects with the Burlington at Concordia does not aid the Commission in proving the existence of a through route, since the power to establish through routes under Section 15 (3) and (4) also presupposes such physical connection. And the showing that appellant publishes a local rate from Lenora to Concordia and that the Burlington publishes a local rate from Concordia to Omaha proves only that each carrier complies with the statutory duty to publish rates for transportation service between points on its own lines.[14]

The only remaining evidence urged in support of the Commission's finding that a through route from Lenora to Omaha via the Burlington already exists is the showing that the Missouri Pacific and the Burlington offer through service from Lenora to points on the Burlington line short of Omaha.[15] Under Section 1 (4) of the Interstate Commerce Act,[16] the Missouri Pacific is required to establish reasonable through routes. In conformity with that Section, the Missouri Pacific furnishes through service from Lenora to Omaha on its own lines via Atchison and, since its own lines do not serve points on the Burlington line short of Omaha, it offers through service to such points in conjunction with the

---

[14] 49 U. S. C. § 6 (1).

[15] The District Court indicated that such through service was offered on joint rates, but appellant states in this Court that such through service was offered on a through rate made up of a combination of the applicable local rates. We need not pause over this conflict since "through routes" from Lenora to points on the Burlington short of Omaha are implied from the fact of through carriage, and are not dependent upon the form of the rates charged. See *St. Louis Southwestern R. Co.* v. *United States,* note 11, *supra,* and *United States* v. *Great Northern R. Co.,* 343 U. S. 562 (decided this day).

[16] 49 U. S. C. § 1 (4).

Burlington. Through service to points short of Omaha cannot be used as evidence of the existence of a through route to Omaha unless we are to hold that compliance with Section 1 (4) causes the Missouri Pacific to lose its right to serve Omaha via its own lines, a right guaranteed by Section 15 (4). We reject the Commission's argument that the existence of through routes from Lenora to points on the Burlington line short of Omaha proves the existence of a through route to Omaha via the Burlington as requiring an unwarranted distortion of the statutory pattern.

The United States, having joined in defense of the Commission's order in the District Court and on motion to affirm in this Court, has filed a memorandum conceding that the Commission erred in finding that through routes over the Burlington line already exist. The Commission continues to support its order, but the logical conclusion of the theory advanced by the Commission is that through routes exist between all points throughout the country wherever physical rail connections are available. If there is no through carriage over any combination of connecting carriers, the Commission under its present theory would never have to establish through routes under Section 15 (3) and (4) but could divert traffic to any route between two points by ordering reduction of the sum of the local rates over that route. Acceptance of this argument would mean that Congress' insistence on protecting carriers from being required to short haul themselves could be evaded whenever the Commission chose to alter the form of its order.[17] The Com-

---

[17] For example, in *United States* v. *Missouri Pacific R. Co., supra,* the Missouri Pacific furnished through traffic over its own lines from Memphis westward to Ft. Smith, Arkansas, and beyond. The Ft. Smith, Subiaco & R. I. R. Co., desirous of obtaining additional traffic, asked the Commission to establish a through route from

mission, by using the form of order employed in this case, could also divert traffic from existing through routes to the lines of a weak carrier solely to assist that carrier to meet its financial needs, thereby evading completely the applicable prohibition of Section 15 (4), before the Court in *United States* v. *Great Northern R. Co.,* 343 U. S. 562 (decided this day). In short, acceptance of the Commission's argument would mean that the acts of Congress since 1906 granting the Commission only a carefully restricted power to establish through routes have been unnecessary surplusage.

We hold that the Commission's efforts to support its finding that a through route from Lenora to Omaha via the Burlington line already exists are inconsistent with the meaning of the term "through route" as used in the Interstate Commerce Act.[18] Since there is admittedly no

---

Memphis to Ft. Smith via the connecting lines of the Rock Island Railroad, the Subiaco and a line of the Missouri Pacific. The Commission ordered the establishment of the through route with through rates at the same level as the rates then charged over the existing through route between Memphis and Ft. Smith. This Court held the order invalid as infringing upon the rights of the Missouri Pacific under the short-hauling provisions of Section 15 (4). If the Commission is correct in this case, it could have accomplished the forbidden result merely by altering the form of its order—*i. e.,* instead of ordering establishment of a new through route, the Commission could have assumed the existence of a through route from Memphis to Ft. Smith via the lines of the Rock Island, the Subiaco and the Missouri Pacific and accomplished the identical result by ordering reduction of the sum of the local rates over each portion of the route to the level of the rate over the existing through route.

[18] *Virginian R. Co.* v. *United States,* 272 U. S. 658 (1926), is inapposite since through routes were there found to be in existence but commercially closed solely because of unreasonable and discriminatory rates charged by the Virginian over its portion of the route. In this case, there is no finding that the local rate charged by the

evidence that the Missouri Pacific ever offered through transportation service over the route in question, the Commission's order is without evidentiary support under the accepted tests for determining the existence of a through route. Accordingly, the judgment of the District Court dismissing appellant's complaint must be

*Reversed.*

---

Missouri Pacific from Lenora to Concordia is either unreasonable or discriminatory. Similarly, the decision in *Atchison, T. & S. F. R. Co.* v. *United States,* 279 U. S. 768 (1929), is not applicable to the facts of this case.

The Commission's argument that appellant's rates discriminate against Omaha in violation of Section 3 (1) of the Act and thereby cause appellant to lose the protection of Section 15 (4) is without substance because the Commission did not consider whether the rates charged by the Missouri Pacific over its own lines are discriminatory, much less make any finding to that effect.