**ATLANTIC COAST LINE RAILROAD COMPANY et al., Plaintiffs,**

v.

**UNITED STATES of America et al., Defendants.**

**Civ. A. No. 1811.**

United States District Court
M. D. Georgia,
Macon Division.

April 18, 1962.

Albert B. Russ, Jr., Jacksonville, Fla., for Atlantic Coast Line R. Co.

C. E. Martin, Atlanta, Ga., for Georgia R. Co.

C. Baxter Jones, Macon, Ga., Homer S. Carpenter, Washington, D. C., for Harlan County Coal Operators Assn.

Leonard S. Goodman, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

Truett Smith, Asst. U. S. Atty., Macon, Ga., for United States.

Charles J. Bloch, Macon, Ga., Henry J. Karison, Washington, D. C., R. Granville Curry, Washington, D. C., for Southern Ry. Co. and Georgia Southern & Florida Ry. Co.

Before BELL, Circuit Judge, and BOOTLE and MORGAN, District Judges.

GRIFFIN B. BELL, Circuit Judge.

This is an action brought under 28 U.S.C.A. §§ 1336, 1398, and 2321–2325 by plaintiffs, Atlantic Coast Line Railroad Company, Louisville and Nashville Railroad Company, and Georgia Rail Road & Banking Company, operated as Georgia Railroad by its lessees, Atlantic Coast Line Railroad Company and Louisville and Nashville Railroad Company against the United States to annul and set aside a report and order of the Interstate Commerce Commission, entered on May 19, 1961, in the proceeding entitled Routing, Coal from Origins on Louisville & N. R., 313 I.C.C. 752, and an order of September 13, 1961 denying a petition for reconsideration.[1]

---

1. Harlan County Coal Operators' Association, Mead Corporation and the Georgia Kraft Company, a corporation having its principal office in Macon, Georgia, were allowed to intervene as additional plaintiffs. The Interstate Commerce Commission, Southern Railway Company and Georgia, Southern and Florida Railway Company were allowed to intervene as additional defendants.

The report and order found certain tariffs or schedules of the Southern Railway Company and its subsidiary, Georgia Southern and Florida Railway Company, to be reasonable, just and consistent with the public interest. These tariffs cancelled through routes embracing the Georgia Railroad and the Atlantic Coast Line Railroad Company, as intermediate carriers between Atlanta and Macon or Cordele, Georgia, thereby eliminating them from participation in the lowest competitive joint rates on coal moving from origin mines on the Louisville and Nashville Railroad Company to certain stations on Southern's subsidiary, the Georgia Southern and Florida Railway Company. This report and order was entered on further hearing after the remand order of this Court in Southern Railway Co. v. United States, D.C., 167 F.Supp. 747 which concerned the report and order of the Commission dated March 19, 1957, in the titled proceeding. 300 I.C.C. 125. The Commission proceeding was under Investigation and Suspension Docket No. 6538. The hearing there and the report and order here also embraces Suspension Docket No. 33128 of the Commission.

Following the remand order plaintiffs successfully sought to reopen the proceeding for further hearing. The Commission also vacated its previous order requiring Southern to cancel its tariff or schedule restrictions closing the Georgia Railroad and Coast Line routes. The order was continued in effect as to the through route of the Central of Georgia Railway Company with the result that Southern was not permitted to file schedules cancelling it. The original controversy was thereby narrowed to the cancellation of only two through routes when Southern filed new schedules eliminating these routes of the Georgia and Coast Line. Plaintiffs protested the schedules and requested their suspension pending the hearing in the reopened proceeding. The Commission declined to suspend, but entered an order of investigation. Docket No. 33128, supra. The schedules became effective as published.

The Examiner, after hearing, found the schedules cancelling these routes to be just and reasonable and not otherwise unlawful, and the Commission by its Division 2 then entered the report and order which is the subject matter of this proceeding.

This court stated in its prior decision:

"For many years there has been in effect a joint rate on coal originating on the lines of the L. & N. and N. C. & St. L. [hereinafter sometimes collectively called L. & N.] and the several roads covering the following four routes:

"(1) Louisville & Nashville to Atlanta; Southern to Macon; Georgia Southern to destination.

"(2) Louisville & Nashville to Atlanta; Georgia Railroad to Macon; Georgia Southern to destination.

"(3) Louisville & Nashville to Atlanta; Central of Georgia to Macon; Georgia Southern to destination.

"(4) Louisville & Nashville to Atlanta; Atlantic Coast Line to Cordele; Georgia Southern to destination.

"The Georgia Southern is a subsidiary of the Southern Railway Company and is operated as an integral part of the Southern system. Thus, in each of the above routes, final delivery is made by the Southern.

"The Commission made findings to the effect that, from the common gateway, Atlanta, the distances to Warner Robins, Georgia, called by the Commission in its brief here, 'a representative destination' are for the several numbered routes: (1) 104 miles; (2) 219 miles; (3) 119 miles; (4) 220 miles. Each of them requires an interchange of cars at Atlanta, and each of them, except No. (1), requires a second interchange at Macon in routes (2) and (3), and at Cordele in route (4). In the case of No. (4), Coast Line from Atlanta and Georgia Southern to

Warner Robins, there is a back-haul of approximately 48 miles."

This prior decision resulted from a review of a finding by the Commission that the cancellation of the bridge routes would not be consistent with the public interest on the routes designated as (2), (3), and (4) in that they were not unduly circuitous, because shipper testimony favored their continuance, and because the needs of commerce generally and of the national defense required their maintenance. This order was set aside and the case remanded with the observation that Southern had carried the initial burden of proving that the cancellation of routes (2) and (4) was just and reasonable and consistent with the public interest in view of the extent of circuity involved considered in the light of resulting economic loss.

The remand was for the stated reason that there were no basic findings by the Commission by which countervailing considerations which might counteract the prima facie case made by Southern might be measured. The court noted that among other considerations which might properly be weighed for this purpose were the need for competing lines in the particular coal traffic involved, the need for interchanges between the carriers involved for continued efficient transportation of this traffic or in general, the effect on such interchange and on the economic position of the other carriers of the elimination of these joint routes for coal, and the effect of such elimination on the carriers concerned in relation to their ability to furnish adequate service if and when needed for national defense.[2]

The substantial and controlling question now before us is whether the decision of the Commission that cancellation of the routes in issue is just, reasonable, consistent with the public interest; or stated differently, warranted in the law, and supported by adequate findings based on substantial evidence.

We note in the beginning that our function is exhausted if we find a rational basis for the conclusions of the Commission. Mississippi Valley Barge Line Co. v. United States, 1934, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260. We may not substitute our view concerning what should be done for the judgment of the Commission if that judgment has support in the record and the applicable law. United States v. Pierce Auto Freight Lines, Inc., 1946, 327 U.S. 515, 536, 66 S.Ct. 687, 90 L.Ed. 821. As this court stated in the prior litigation:

" * * * Undoubtedly the Interstate Commerce Act charges the Commission with the duty of promoting 'adequate, economical, and efficient service, and of fostering sound economic conditions in transportation.' It is also obvious that some of these requirements may be mutually inconsistent in particular situations. For example a sound economic condition in transportation may require a balance between the wasteful duplication of facilities and services on the one hand and the need for healthy competition on the other. The balancing of these demands is, we think, peculiarly within the jurisdiction of the Commission. Thus, in addition to the usual injunction that the courts must not upset factual determinations of administrative tribunals, if supported by adequate findings of fact based on substantial evidence from the record as a whole, we are here required to recognize that there are also certain quasi policy determinations that are inviolate insofar as they are shown to be made within the framework of the law and on an adequate factual basis."

The Commission concluded on the evidence submitted that cancellation of routes here was consistent with the public interest, and that the schedules effecting the cancellations were just and reasonable. Several findings to support

---

2. Consideration of National Defense as an issue was eliminated by counsel for the parties on oral argument.

these conclusions were made and each was based on substantial evidence in the record. One of these was that the routes, measured to the principal destination of the coal traffic, were unduly circuitous and resulted in an operation at an unnecessarily higher cost than was the case over the Southern route, the routes in question being more than one hundred percent longer than the route of the Southern.[3] Another was that an additional interchange is required on these routes either at Macon or Cordele as compared to the route of the Southern. There was contrary evidence and a finding that an interchange between the Louisville and Nashville and Coast Line had been eliminated in Atlanta through yard consolidation and that Coast Line service to Warner Robins was faster than that of Southern. It was held also that there was no showing of any shipper need for the routes. The shipper testimony was either an expression of a desire to have as many competing lines available as possible, or an expression of fear, unsubstantiated, that the daily service of the Georgia Railroad on the Macon branch (Camak to Macon) would be reduced to tri-weekly or even bi-weekly service in the event of loss of this coal traffic. It was found that the loss of this traffic would have no significant effect on the total interchange by Georgia Railroad with the Georgia Southern at Macon. Another supported finding, not rebutted by plaintiffs, was that the coal traffic in question was not profitable to the Coast Line and Georgia Railroad.

We hold that the findings were both appropriate and sufficient in scope, based on substantial evidence from the record as a whole and that the conclusions of justness, reasonableness and consistency with the public interest are warranted in fact and in law.[4]

The remaining assignments of error include the contention that there were no findings of fact that the rates or charges as distinguished from the schedules closing the routes were just and reasonable under Section 1(4) and (5) of the Act. 49 U.S.C.A. § 1(4, 5). As heretofore noted the Commission proceeded on remand under Section 15(3) and (7) of the Act and the questions before it were whether the route closings were consistent with the public interest, and whether the schedules effecting the cancellations were just and reasonable. This was sufficient. The routes were closed and no question was left as to rates. Southern no longer held itself out as offering through transportation service on coal over these routes. Thompson v. United States, 1952, 343 U.S. 549, 557, 72 S.Ct. 978, 96 L.Ed. 1134. That shipments could continue to move over the same route on local bills of lading at the higher combination rates would not suffice to convert the sum of the routes into through routes.

And on remand it was proper for the Commission to vacate its prior order cancelling the closing of the Coast Line and Georgia Railroad routes by Southern.

---

3. The report and order showed that Southern in the years 1955, 1958 and 1959 moved virtually all of the effected traffic except the slightly more than one fourth of the total moving to Warner Robins Air Base which reflected the government policy of distributing traffic among available routes on a somewhat prorate basis. Thus the fight here is over the govment coal traffic to Warner Robins, Georgia.

4. Tested by the admonition of Section 15 (3) of the Interstate Commerce Act, 49 U.S.C.A. § 15(3), in pertinent part:
"If any tariff or schedule canceling any through route * * *, without the con-

sent of all carriers parties thereto or authorization by the Commission, is suspended by the Commission for investigation, the burden of proof shall be upon the carrier or carriers proposing such cancellation to show that it is consistent with the public interest, * * *."

Section 15(7) of the Act, 49 U.S.C.A. § 15(7) authorizes the Commission to investigate the lawfulness of any new joint rate or joint classification, regulation or practice affecting any rate and may order suspension for a period no longer than seven months. The burden of proof at any hearing is on the proponent to show justness and reasonableness.

The status quo did not require continuing the order of cancellation in effect in view of the decision of this court that Southern had established a prima facie case. Plaintiffs tie this action to the denial of their application to the Suspension Board of the Commission to suspend the cancellation and claim prejudice, but prejudice cannot be based on what was lawful action in every respect. We also reject the claim of plaintiffs that the burden of proof was imposed on them in the proceedings after remand. They were not required to disprove the findings of this court. The burden remained on Southern. We likewise reject the argument that when these contentions are considered together, even if not in and of themselves unlawful, deprivation of due process under the Fifth Amendment is shown.

Plaintiffs make the novel point that Southern discriminates against the Georgia Railroad by accepting traffic from Central of Georgia at Macon on the basis of through route joint rates in violation of the Section 3(4) of the Act, 49 U.S.C.A. § 3(4). They contend that the point of discrimination is upon delivery in Macon and that to avoid discrimination Southern must perform the same service at the same rate for all cars delivered to Macon by any carrier. To adopt this theory would be to eliminate consideration of the route itself and the factors relating thereto such as circuity and waste from consideration in a route closing case. We are not here concerned with switching or terminal services. Cf. Louisville & Nashville Railroad Company v. United States, 1915, 238 U.S. 1, 35 S.Ct. 696, 59 L.Ed. 1177. Section 3(4) requires equality of treatment between connecting lines but equality of treatment involves comparable conditions and the route of the Georgia being closed does not compare with that of Southern or the Central of Georgia.

Finding no prejudicial error, and concluding that the findings of the Commission are based on substantial evidence considered on the record as a whole, that they are adequate in form and amply support the legal conclusion that Southern carried its requisite burden in connection with the closing of these routes, the petition to annul and set aside is Denied.