**IML SEATRANSIT, LTD., Plaintiff,**

v.

**UNITED STATES of America**
and
**Interstate Commerce Commission, Defendants,**
and
**D. C. Andrews International, Inc., Aloha Consolidators and Freight Forwarders, Inc., Star Forwarders, Inc. and Hawaiian Express Service, Inc., Intervenors.**

**Civ. No. C-70 2667.**

United States District Court,
N. D. California,
Jan. 18, 1971.

Frank Loughran, Loughran, Berol & Hegarty, San Francisco, Cal., for plaintiff.

James L. Browning, Jr., U.S. Atty., Steven Kazan, Asst. U.S. Atty., San Francisco, Cal., for defendants.

Handler, Baker & Greene, Daniel W. Baker, San Francisco, Cal., for intervenors.

## ORDER GRANTING TEMPORARY RESTRAINING ORDER.

ZIRPOLI, District Judge.

This matter comes before the Court on plaintiff's motion for a temporary re-

straining order staying and restraining defendant Interstate Commerce Commission from permitting its order issued October 14, 1970, which is the subject of the complaint in the instant action, to become effective to the extent that such order involves service by plaintiff between Oakland and San Leandro, California on the one hand, and Hawaii on the other hand, until such time as the hearing before a three-judge court for a temporary injunction, which plaintiff requested, can be had and that request determined.

The parties are in agreement that this is an appropriate case to be decided by a three-judge court and they are further in agreement that it is within the jurisdiction of the district judge to whom application is made to grant a temporary restraining order if an appropriate showing is made (1) that plaintiff is likely to prevail on the merits of the appeal, (2) that the order will preserve the status quo, (3) that without a stay irreparable harm will come to petitioner, (4) that no substantial harm will come to other interested parties, and (5) that the public interest will not be harmed.

■ In the view of this district judge to whom application for the temporary restraining order has been made, plaintiff has made the requisite showing for such an order. The order will preserve the status quo (a condition that has existed for approximately the past five (5) years). Without a stay plaintiff may well suffer irreparable injury in the form of substantial financial loss and may lose substantial good will of its customers that it may or may not retrieve if the court should later reverse the Commission. The record does not reflect that there will be substantial harm to other interested parties or to the public if the temporary restraining order is granted. The only serious issue to be resolved before concluding that the order should be granted is plaintiff's likelihood to prevail on the merits, and this issue is resolved in favor of plaintiff for the reasons herein stated.

Plaintiff is not a freight forwarder within the meaning of Section 402(a) (5) of the Interstate Commerce Act. A freight forwarder is defined as follows:

"The term 'freight forwarder' means any person which (otherwise than as a carrier subject to part I, II, or III of this Act) holds itself out to the general public as a common carrier to transport or provide transportation of property, or any class or classes of property, for compensation in interstate commerce, and which, in the ordinary and usual course of its undertaking, (A) assembles and consolidates or provides for assembling and consolidating shipments of such property, and performs or provides for the performance of break-bulk and distributing operations with respect to such consolidated shipments, and (B) assumes responsibility for the transportation of such property from point of receipt to point of destination, and (C) utilizes, for the whole or any part of the transportation of such shipments, the services of a carrier or carriers subject to part I, II, or III of this Act." 49 U.S.C.A. § 1002(a) (5).

If the operation of the plaintiff between California and Hawaii contains all the elements set forth in said section, the service is that of a freight forwarder. It was admitted and the Interstate Commerce Commission found that plaintiff does not hold a permit to perform a freight forwarder service between these areas.

The Interstate Commerce Commission, in its order, challenged in this proceeding, found that all of the requisites of freight forwarding are present in plaintiff's service and ordered that the service be terminated unless and until an appropriate permit is obtained from the Commission. Plaintiff, by its complaint, does not dispute any findings or conclusions of the Commission, except the finding that it utilizes the services of a motor carrier subject to Part II of the Interstate Commerce Act from Oakland and San Leandro, California, to ship's tackle at Oakland and from the water

carrier's terminal in Honolulu to point of delivery in Hawaii. Plaintiff further admits that when Seatrain was used as the water carrier, plaintiff was in fact utilizing the services of a Part II carrier and was subject to regulation as a freight forwarder. The single narrow question presented in this motion is whether plaintiff utilized a Part II carrier when Matson Navigation Company acted as the water carrier.

While Matson was used plaintiff had its terminal at Oakland, California, where it received its shipments and issued to its shippers its bill of lading covering the movement of traffic from and ' to Hawaii. The shipments were placed in containers by plaintiff, which containers belonged to Matson, the water operating carrier who moved them to Hawaii. The empty containers were delivered to plaintiff by a Part II carrier who was the agent of and employed by Matson and not by plaintiff. The plaintiff stuffed the containers with its shipments and prepared a bill of lading for the operating water carrier to sign covering the movement to Hawaii. The motor carrier, as agent and as an employee of the vessel operating water carrier, picked up the shipment at Oakland and gave the plaintiff a dock receipt of the vessel operating water carrier for the freight. The motor carrier took the shipment to Matson, the vessel operating water carrier, and Matson signed the bill of lading covering the movement of the shipment. The tariff under which this service was provided by Matson was on file with the Federal Maritime Commission (FMC) and carried all-water rates which included the service of getting the shipment to the ship. The motor carrier was employed by and paid by the water carrier exclusively. The motor carrier was a Part II carrier serving Matson under rates which the Part II carrier filed with the Interstate Commerce Commission. Plaintiff employed Matson to move the shipment from Oakland to Hawaii at the rate filed by Matson with the Federal Maritime Commission for this entire service.

It is the Interstate Commerce Commission's contention that because a Part II carrier is used in one stage of the operation, i. e., delivering empty containers from Matson to plaintiff and picking up loaded containers from plaintiff and delivering them to Matson, plaintiff is a freight forwarder.

Both sides cite two cases in support of their position. Alaska Steamship Co. v. Federal Maritime Com'n, 399 F.2d 623 (9th Cir. 1968), and Sea-Land Service, Inc. v. Federal Maritime Com'n, 131 U.S. App.D.C. 246, 404 F.2d 824 (1968). In both cases, the courts held that the water carrier, who together with local trucking companies *filed joint rates for through routes*, were under the jurisdiction of the Interstate Commerce Commission and not the Federal Maritime Commission.

In *Alaska Steamship*, petitioner argued that since the motor carrier involved did only pickup and delivery service, the entire operation should be subject to Federal Maritime Commission jurisdiction. The court held that it was not the length of carriage that determined which agency had jurisdiction, but rather the relationship between the carriers. The court, after considering the relationship between the carriers, held that jurisdiction rested in the Interstate Commerce Commission. The court stated, relevant to the issue in the case at bar:

" * * * FMC asserts that local pickup and delivery arrangements were available under FMC regulations without the need for creating a 'through route' with a 'joint rate.' As precedent it points to its decision in Matson Navigation Co., 7 F.M.C. 480 (1963). There Matson had engaged local carriers as Matson's agents to perform pickup and delivery service in port areas. Matson paid the carriers the ICC tariff rates and included a charge for this service in its own tariffs. In its decision in that case FMC concluded that as long as such trucking service was in the nature of 'pickup and delivery' as distinguished from

'line haul,' it did not constitute a through route; that the charge for such service was a 'terminal charge' and that the *water carrier's rate remained subject to FMC regulation.*

\* \* \* \* \* \*

"Thus ICC does not dispute FMC's decision in Matson. *An arrangement between carriers whereby one employs the other as agent for terminal delivery service, paying that carrier the ICC tariff rate, simply does not entail a joint rate.* It does not entail obligations to the shipper such as are found in through routes. It does not present the regulatory problems presented by through-route and joint-rate arrangements." 399 F.2d at 625–627 (9th Cir. 1968) (emphasis added).

In *Sea-Land Service* the Court of Appeals for the District of Columbia also held that the Interstate Commerce Commission had jurisdiction over joint rates for through routes between truckers and water carriers. Relevant to this case, they distinguished the case of water carriers *hiring* truckers to do local deliveries, saying:

"The FMC states that it has traditionally regulated water carrier service which has included incidental pick-up and delivery by motor carrier in the port area. \* \* \* [W]e perceive no diminution of FMC jurisdiction as the result of our decision today. What is meant by the FMC when it refers to its traditional jurisdiction is *regulation of water carrier tariffs which include motor pick-up and delivery service, so-called single-factor or all-water rates.* Our decision here is confined to joint through services; *it in no way affects all-water tariffs, the regulation of which remains within the authority of the FMC.*

"Respondent argues that there has been no change in Sea-Land's physical activities; that petitioner is merely using different nomenclature for the same conduct. This argument is wide of the mark, for it fails to distinguish the legal significance attaching, on the one hand, where Sea-Land assumes exclusive responsibility for the successful performance of door-to-door transportation, and on the other hand, where Sea-Land is a participant with a motor carrier in a joint undertaking. In the latter instance, there is a contract of carriage between both carriers and the shipper (or consignee), and both carriers are jointly and severally liable." 131 U.S.App.D.C. at 249, 250, 404 F.2d at 827–828 (1968) (emphasis added).

■ These cases make it clear that jurisdiction over combination services is apportioned between the FMC and ICC on the basis of the relationship between the two carriers to each other and to shippers. A true joint rate for through routes consists of a joint undertaking between two carriers who share the responsibility for delivering consigned goods, and who divide the fee paid by the shipper. *See* Thompson v. United States, 343 U.S. 549, 557, 72 S.Ct. 978, 96 L.Ed. 1134 (1952). Such an arrangement is within the jurisdiction of the ICC. Agency agreements, whereby one carrier takes full responsibility for shipment, charges all water rates, and pays any motor carrier at their rates, are services under the jurisdiction of the FMC.

■ Here, the service which plaintiff utilizes is that of a single-factor or all-water carrier, admittedly under the jurisdiction of the FMC. Plaintiff, as consignor and consignee of the goods involved, hires Matson to transport those goods to Hawaii. Matson, in agreeing to so transport them, takes complete responsibility for the goods under provisions included in an FMC tariff and charges plaintiff all-water rates for its services pursuant to this FMC tariff. It is true that included in this service is carriage by a Part II carrier, but this carrier neither assumes any responsibility to plaintiff for the goods nor receives

any "proportional" share of plaintiff's payment to Matson for the service. A Matson bill of lading is issued for the entire service. In other words, Matson and the carrier are not joint participants in through routes. Consequently, the Matson service is one regulated by the FMC and not the ICC, pursuant to the court's distinctions in *Alaska Steamship* and *Sea-Land Service, Inc., supra.* Thus, by definition, plaintiff does not utilize the services of a Part II carrier, because the Matson service it employs is not even under the jurisdiction of the ICC but is under the jurisdiction of the FMC. That a Part II carrier is involved in the operation does not detract from the fact that the service utilized by plaintiff is an all-water service subject not to Part II of the Interstate Commerce Act, but to the regulations of the FMC. Plaintiff cannot be considered a freight forwarder within the meaning of 49 U.S.C. § 1002(a) (5) and the order of the ICC is without effect.[1]

Therefore, it is ordered that defendants and their agents and employees be and hereby are restrained and enjoined from entering or seeking to enforce any order directing plaintiff to cease and desist from conducting operations between San Leandro and Oakland, California on the one hand, and Hawaii on the other hand when such operations are conducted in the limited manner described above, and the effective date of the orders of the Interstate Commerce Commission in relation to this service are hereby enjoined.

It is further ordered that this temporary restraining order, unless previously revoked, shall remain in force only until hearing and determination by the full court composed of three judges as required by 28 U.S.C. § 2284.

[1]. In this case to this point, defendants have only argued that plaintiff used a Part II carrier on the California end of the operation. The court, having concluded that plaintiff, when using the Matson service, did not utilize a Part II carrier, offers no opinion on whether or not plaintiff utilized a Part II carrier in Hawaii. Should such a showing be made, plaintiff would fall into the definition of 49 U.S.C. § 1002(a) (5) and further proceedings would be appropriate.