549 F.2d 1186
 The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al., Petitioners,
American Bakers Association et al., Intervenors-Petitioners,
v.
The UNITED STATES of America, the Interstate Commerce
Commission, Repondents,
Board of Trade of the City of Chicago, Intervenor-Respondent.
 No. 76-1198.
 United States Court of Appeals, Eighth Circuit.
 Submitted Dec. 16, 1976.
Decided Feb. 24, 1977.
 
 R. Eden Martin, Chicago, Ill., for petitioners.
 
 
 1
 Peter M. Shannon, Jr., Interstate Commerce Commission, Washington, D. C., for respondent, Interstate Commerce Commission.
 
 
 2
 Harold E. Spencer, Chicago, Ill., for intervenor-respondent, Bd. of Trade of the City of Chicago.
 
 
 3
 Albert E. Schoenbeck, St. Louis, Mo., John J. Paylor, Cleveland, Ohio, John A. Daily, Philadelphia, Pa., Peter J. Hunter, Jr., Roanoke, Va., Howard J. Trienens, R. Eden Martin and James W. Jandacek, Chicago, Ill., Smith R. Brittingham, Jr., Virginia Beach, Va., Joseph D. Feeney, Chicago, Ill., for railroad petitioners.
 
 
 4
 Phil M. Cartmell, Jr., Kansas City, Mo., for Bd. of Trade of Kansas City, Mo., Inc., intervenor-petitioner.
 
 
 5
 Arthur L. Winn, Jr., Samuel H. Moerman and Paul M. Donovan, Washington, D. C., for Anheuser-Busch, Inc., intervenor-petitioner; LaRoe, Winn & Moerman, Washington, D. C., of counsel.
 
 
 6
 Frederick H. Mayer, St. Louis, Mo., John F. Donelan, and John K. Maser, III, Washington, D. C., for American Bakers Association, intervenor-petitioner.
 
 
 7
 Donald I. Baker, Asst. Atty. Gen., James Ponsoldt, Atty., I. C. C., Robert S. Burk, Acting Gen. Counsel, Charles H. White, Jr., Associate Gen. Counsel, Peter M. Shannon, Jr., Atty., I. C. C., Washington, D. C., for the United States and Interstate Commerce Commission, respondents.
 
 
 8
 Before STEPHENSON and HENLEY, Circuit Judges, and MEREDITH,* District Judge.
 
 
 9
 STEPHENSON, Circuit Judge.
 
 
 10
 Petitioners seek to review and set aside orders of the Interstate Commerce Commission (ICC) declaring certain railroad rates for the shipment of wheat eastward from Chicago to be unlawfully discriminatory and directing that the discrimination be removed.[1] The principal issue before us is whether the Commission erred in finding the rates to be discriminatory as a matter of law in violation of section 2 of the Interstate Commerce Act, 49 U.S.C. § 2.[2]
 
 
 11
 This controversy centers around the dual rate structure maintained by the petitioning railroads for the eastward reshipment of wheat originally shipped to Chicago from points west. Wheat arriving in Chicago by rail, lake steamer or barge is treated as having originated west of Chicago and is accorded a through or proportional rate for reshipment to the east.[3] Wheat arriving in Chicago by motor carrier and reshipped to the east is treated as having originated in Chicago and is charged a local rate. In 1973, the proportional rate for wheat shipped from Chicago to New York was 81.5 cents per hundredweight. The local rate for the same movement was 98 cents. It is undisputed that the cost of service to the railroads for the eastward transportation of wheat from Chicago does not vary according to the manner in which the wheat was shipped to Chicago. All wheat arriving in Chicago is deposited in the same elevators and thereafter loses its identity.
 
 
 12
 In 1973, the Chicago Board of Trade filed a complaint with the ICC, alleging, inter alia, that the dual rate structure as it affected motor-carrier-arrived wheat at Chicago was unreasonable and discriminatory, and thus in violation of sections 1, 2 and 3(1) of the Interstate Commerce Act, 49 U.S.C. §§ 1, 2 and 3(1). The matter was referred to an administrative law judge, who, after hearings, found that the aforesaid rates were unjustly discriminatory in contravention of 49 U.S.C. § 2.[4] The hearing examiner stated that his decision was compelled by I C C v. Mechling, 330 U.S. 567, 67 S.Ct. 894, 91 L.Ed. 1102 (1947); and James McWilliams Blue Line, Inc. v. United States, 100 F.Supp. 66 (S.D.N.Y.1951), aff'd per curiam, 342 U.S. 951, 72 S.Ct. 626, 96 L.Ed. 707 (1952); cases which he viewed as indistinguishable from the instant controversy. The railroads were directed to remove the unlawful discrimination.
 
 
 13
 The hearing examiner's decision was affirmed and adopted by Division 2 of the Commission. Thereafter, petitioners sought and were denied review by the full Commission. The Commission, however, stayed the effective date of the relief ordered pending the completion of judicial review. This petition for review, filed by the affected railroads, followed.[5]
 
 
 14
 49 U.S.C. § 2 prohibits carriers from charging different rates for doing "like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions * * *."[6] Petitioners contend that Wheat reshipped by rail after arriving in Chicago by rail, barge or lake steamer is a through movement,[7] whereas wheat arriving by truck and reshipped by rail is a local movement. Based on that distinction, and on the fact that the Interstate Commerce Act requires rail and water carriers to establish through routes with each other, 49 U.S.C. §§ 1(4) and 905, but does not require those carriers to establish through routes with motor carriers,[8] petitioners argue that the circumstances of truck-rail transportation on the one hand and rail, barge, lake-rail transportation on the other are dissimilar, and that section 2, therefore, does not require that the respective rates be the same. They argue that Mechling and Blue Line are inapposite in that those cases concerned barges and did not involve the through-local distinction presented here, and that the controlling case which mandates a finding of no discrimination is I C C v. Inland Waterways Corp., 319 U.S. 671, 63 S.Ct. 1296, 87 L.Ed. 1655 (1943). Respondents urge that since the physical transportation of wheat eastward from Chicago and the cost thereof is the same regardless of the mode of transportation by which it arrived, the characterization of one movement as through and the other as local is of no consequence, and that the Commission properly declared the rates to be discriminatory in accordance with Mechling and Blue Line.
 
 
 15
 We turn to an examination of the cases urged by each side as controlling.
 
 
 16
 Inland Waterways concerned the legality of railroad rates for the reshipping of grain eastward from Chicago. The railroads filed tariffs which applied proportional reshipping rates to grain arriving at Chicago by rail or lake steamer, and local rates to grain arriving by barge. In all cases, the local rates were higher than the proportional rates. After hearings on the proposed tariffs, the Commission sustained the rates, stating in part:
 
 
 17
 Protestants maintain that the proposed schedules will be unreasonable, unjustly discriminatory, and unduly prejudicial . . . and unduly preferential * * *. This is based primarily on the fact that under the proposed schedules the ex-barge rates will be higher than the ex-rail or ex-lake rates, although in each instance the physical carriage beyond the reshipping point is substantially the same. But the latter is also true of local grain, grain brought in by truck, or by rail under intrastate rates, or grain which has forfeited its transit privileges. To adopt protestants' premise would mean that all proportional rates lower than local rates and differing from each other according to the origin of the commodity would have to be condemned. As pointed out by the division, reshipping or proportional rates are in their essence balances of through rates. Such balances are, of course, determined by the measure of the in-bound and through rates, and properly may vary according to the relative length and nature of the in-bound and through service. It follows that the protestants' allegations cannot be sustained in this proceeding, although in a proper proceeding we might prescribe proportional rates on the ex-barge traffic lower than local rates or joint barge-rail rates lower than the combinations.
 
 
 18
 319 U.S. at 681, 63 S.Ct. at 1302.
 
 
 19
 While the aforesaid Commission proceedings were pending, Congress enacted the Transportation Act of 1940, which, inter alia, conferred common carrier status on barge lines and required that they and the railroads enter into reasonable through routes with each other. 49 U.S.C. §§ 1(4) and 905. The barge lines sought reopening of the hearings or reconsideration on that basis, but were denied relief. Suit was then filed seeking to annul the Commission's approval of the new rates on grounds that the rates unlawfully discriminated against barges. The district court granted relief, 44 F.Supp. 368; however, the Supreme Court reversed. Mr. Justice Jackson, writing for the majority, stated in part:
 
 
 20
 In the proceedings before the Commission the protestants pitched their case upon two propositions: (1) To deny the ex-barge grain the benefit of proportionals sought to be cancelled was necessarily unlawful since the physical carriage beyond Chicago was substantially the same, no matter where the grain originated; * * *.
 
 
 21
 As the Commission correctly observed with reference to the first contention, "to adopt protestants' premise would mean that all proportional rates lower than local rates and differing from each other according to the origin of the commodity would have to be condemned."
 
 
 22
 Proportional rates so differing and lower than local rates for like outbound transportation have a long history, antedating the Interstate Commerce Act itself. * * *
 
 
 23
 To sustain the injunction would require a holding that grain originating 60 miles from Chicago must as matter of law be given the benefit of proportionals fixed with reference to grain from the Northwest Territory, embracing points in Canada and as far west in the United States as Washington and the Dakotas. In addition to the disparity in distances, there is the further fact that the grain from the Northwest is predominately wheat, while that from the territory served by the barge lines is predominately corn from Illinois. Nothing in the Interstate Commerce Act as amended by the Transportation Act of 1940, or in the statements of even the most ardent Congressional champions of water transportation, affords the slightest warrant for a decision that the Commission must treat as legally identical such widely disparate factual situations.
 
 
 24
 319 U.S. at 683-88, 63 S.Ct. at 1303-1305.
 
 
 25
 The Court noted that it viewed neither the Commission's action nor its own as an approval of the then-existing rates, but rather as a determination that "the proposed schedules could not be struck down upon the erroneous view advanced by the protestants." 319 U.S. at 686, 63 S.Ct. at 1305. Mr. Justice Black dissented, stating that the rate structure unlawfully discriminated against barge traffic.
 
 
 26
 As noted above, the Commission, in the Inland Waterways proceedings, stated that while protestants' allegations could not be sustained, "in a proper proceeding we might prescribe proportional rates on the ex-barge traffic lower than local rates or joint barge-rail rates lower than the combination." 319 U.S. at 681, 63 S.Ct. at 1302. Proceedings to that end ensued and formed the basis for the Supreme Court's decision in I C C v. Mechling, supra. The Commission concluded that the proposed rate structure which contained an 81/2 cent higher rate for ex-barge grain than for ex-rail or ex-lake grain was unlawful. It further concluded, however, that reshipping rates from Chicago for ex-barge grain would be reasonable and lawful even though they were 3 cents per hundredweight higher than the comparable rates for ex-rail and ex-lake grain. Various barge lines then instituted suit, contending that the order was void in that it approved higher rates for ex-barge grain without any showing that cost of transportation to the railroads was higher for such grain than for ex-rail or ex-lake grain. The district court sustained the petitioners' allegations and enjoined the Commission's order to the extent that it permitted the 3 cent differential. On appeal, the Supreme Court affirmed, relying in part on 49 U.S.C. § 2. Mr. Justice Black, writing for the majority, stated:
 
 
 27
 The foregoing provisions flatly forbid the Commission to approve barge rates or barge-rail rates which do not preserve intact the inherent advantages of cheaper water transportation, but discriminate against water carriers and the goods they transport. Concretely, the provisions mean in this case that Chicago-to-the-east railroads cannot lawfully charge more for carrying ex-barge than for carrying ex-lake or ex-rail grains to and from the same localities, unless the eastern haul of the ex-barge grain costs the eastern railroads more to haul than does ex-rail or ex-lake grain. * * *
 
 
 28
 The basic error of the Commission here is that it seemed to act on the assumption that the congressional prohibitions of railroad rate discriminations against water carriers were not applicable to such discriminations if accomplished by through rates. But this assumption would permit the destruction or curtailment of the advantages to shippers of cheap barge transportation whenever the transported goods were carried beyond the end of the barge line. This case proves that. For while Chicago is a great grain center, it cannot consume all barge-transported grain. That grain, like other grain coming to Chicago for marketing or processing, is reshipped to distant destinations.
 
 
 29
 330 U.S. at 577, 67 S.Ct. at 899. Justices Frankfurter and Jackson dissented.
 
 
 30
 The third case relied on by one or the other of the parties is James McWilliams Blue Line, Inc. v. United States, supra. That case concerned railroad rates for the transportation of coal mined in Virginia, West Virginia and Kentucky, to Hampton Roads ports, then to New England ports, and finally to interior ports. Shippers moving coal by rail to Hampton Roads, then by ocean barge to the New England ports, and then by barge to its ultimate destination (rail-ocean-barge) were charged 45 cents per ton more for the initial rail transportation than those who used rail transportation for the third and final leg of the movement (rail-ocean-rail), All parties conceded that the railroads' cost of transporting the coal to Hampton Roads in the first instance was the same in both cases. On complaint, the Commission found no unlawful discrimination. In subsequent court proceedings, however, the district court held that the disparate rate structure was discriminatory in violation of 49 U.S.C. § 2, stating that the case was indistinguishable from I C C v. Mechling, supra. See James McWilliams Blue Line, Inc. v. United States, supra, 100 F.Supp. at 70. The Supreme Court affirmed per curiam. 342 U.S. 951, 72 S.Ct. 626, 96 L.Ed. 707 (1952).
 
 
 31
 Based on our reading of the statute and of the cases urged by each side as controlling, we agree with the Commission that the rates here under attack are discriminatory as a matter of law under 49 U.S.C. § 2. We reject petitioners' characterization of Mechling and Blue Line as being limited to barges or comparisons between through rates. Rather, we read those cases to hold that different rates may not be charged similarly situated shippers for the same service, based on the mode of transportation used in a prior or subsequent movement, where the cost of providing the service is the same. In view of the conceded similarity in costs and circumstances in this case, Mechling and Blue Line compel a finding of discrimination under section 2. Petitioners' argument that the truck-rail transportation of grain is a local movement whereas the rail-barge, lake-rail movement is a through movement is beside the point. Cf. I C C v. Mechling, supra, 330 U.S. at 577, 67 S.Ct. 894.
 
 
 32
 We do not view Inland Waterways as being inconsistent with Mechling and Blue Line. In that case the petitioners focused more on the origin of the grain as the basis of the discrimination than on the mode of transportation into Chicago. Both the Commission and the Supreme Court stated that their holdings did not connote approval of the rates, but only that petitioners' assertions could not be sustained. In any event, to the extent that Inland Waterways is inconsistent with Mechling and Blue Line, we are bound by the Supreme Court's latest pronouncements as reflected in the latter.[9]
 
 
 33
 The petition to review and set aside the orders of the Interstate Commerce Commission is denied.
 
 
 
 *
 The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 The orders were entered in proceedings styled Board of Trade of the City of Chicago v. The Akron, Canton & Youngstown R. R. Co., et al., Docket No. 35825. We have jurisdiction pursuant to 28 U.S.C. §§ 2321(a) and 2342(5). Venue is proper in this court in that several of the petitioning railroads have their principal offices in this circuit. 28 U.S.C. § 2343
 
 
 [2]
 49 U.S.C. § 2 provides:
 If any common carrier subject to the provisions of this chapter shall, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any person or persons a greater or less compensation for any service rendered or to be rendered, in the transportation of passengers or property, subject to the provisions of this chapter, than it charges, demands, collects, or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is prohibited and declared to be unlawful.
 
 
 [3]
 A through route is an arrangement between connecting carriers for the continuous carriage of goods from an originating point on the line of one carrier to a destination on the line of another. The sum of the charges for the entire movement is the through rate. Each carrier's charge for its part of the through movement is a portion of the through rate and is often referred to as a proportional rate. See generally Thompson v. United States, 343 U.S. 549, 556-57, 72 S.Ct. 978, 96 L.Ed. 1134 (1952); Routing Restrictions Over Seatrain Lines, Inc., 296 I.C.C. 767, 772-75 (1955)
 
 
 [4]
 The hearing examiner stated his findings as follows:
 The Administrative Law Judge finds that the maintenance of the assailed proportional or reshipping rates and charges from Chicago, Ill., to points in the eastern United States, as set forth in the defendant railroads' tariffs, on wheat and wheat products, in carloads, where the prior movement of the commodities to Chicago is by railroad, lake vessel, or barge, without maintaining like rates and charges, at the same levels, and from and to the same points on the same commodities where the prior movement to Chicago is by for-hire motor carrier, is unjustly discriminatory in contravention of the provisions of section 2 of the Interstate Commerce Act; and that the assailed rates and charges are not shown to be otherwise unlawful.
 
 
 [5]
 We granted leave to intervene as petitioners to the American Bakers Association, Anheuser-Busch, Inc., and The Board of Trade of Kansas City, Missouri; and leave to intervene as a respondent to the Board of Trade of the City of Chicago
 
 
 [6]
 The text of 49 U.S.C. § 2 is set forth at note 2, supra
 
 
 [7]
 See note 3, supra
 
 
 [8]
 Under 49 U.S.C. § 316(c), establishment of such through routes is permitted but not required
 
 
 [9]
 Petitioners additionally contend that the Commission erred in failing to consider the disruptive consequences of its decision on the national grain rate structure. In view of our holding that the Commission's decision was mandated by Mechling and Blue Line, we find no merit to this contention